**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------- x

FWK HOLDINGS, L.L.C.,

             Plaintiffs,

v.

ACTAVIS ELIZABETH, LLC, *et al.*,

             Defendants.

--------------------------------------------------- x

Case No. 16 Civ. 9901 (JSR)

ORAL ARGUMENT REQUESTED

--------------------------------------------------- x

CÉSAR CASTILLO, INC., *et al.*,

             Plaintiffs,

v.

ACTAVIS ELIZABETH, LLC, *et al.*,

             Defendants.

--------------------------------------------------- x

Case No. 17 Civ. 78 (JSR)

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF HERITAGE PHARMACEUTICALS INC.'S AND UPSHER-SMITH LABORATORIES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

GIBSON, DUNN & CRUTCHER LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9527

200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 716-0875

*Attorneys for Defendant*
*Heritage Pharmaceuticals Inc.*

January 27, 2017

KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

*Attorneys for Defendant*
*Upsher-Smith Laboratories, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

    A.    The Named Plaintiffs' Alleged Propranolol Purchases ......................................... 2

    B.    Defendants' Alleged Conduct And New York Contacts ...................................... 2

    C.    Other Jurisdictional Allegations In The Complaints .............................................. 4

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.    THE OUT-OF-STATE DEFENDANTS ARE NOT SUBJECT TO
    GENERAL PERSONAL JURISDICTION IN NEW YORK. ...................................... 6

II.    THE OUT-OF-STATE DEFENDANTS ARE NOT SUBJECT TO
    SPECIFIC PERSONAL JURISDICTION IN NEW YORK ON
    PLAINTIFFS' CLAIMS. ............................................................................................ 7

    A.    The "Purposeful Availment" Theory Fails Because Plaintiffs Do
        Not Allege In-Forum Acts By The Out-Of-State Defendants From
        Which Their Claims Purportedly Arise. .................................................... 8

    B.    The "Effects" Test Fails Because Plaintiffs Do Not Allege That
        The Out-Of-State Defendants Took Express Aim At This Forum. ......... 11

    C.    The Conspiracy Alleged Cannot Sustain Vicarious Personal
        Jurisdiction Over The Out-Of-State Defendants..................................... 12

III.    A THEORY OF "NATIONWIDE" CONTACTS CANNOT VALIDLY
    CONFER JURISDICTION HERE. ............................................................................ 13

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
  No. 13 Civ. 981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................11, 13, 14

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987)......................................................................................................14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002).............................................................................................8

*Beach v. Citigroup Alt. Invs. LLC*,
  No. 12 Civ. 7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .........................................5, 11

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)..........................................................................................6, 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................................13, 14

*Calder v. Jones*,
  465 U.S. 783 (1984)....................................................................................................8, 11

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012)............................................................................................14

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998)............................................................................................6, 8

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)...............................................................................................1, 6, 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)......................................................................................................6, 7

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014).....................................................................................6, 7, 14

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945)......................................................................................................6, 7

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)..........................................................................................................5

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*Laydon v. Mizuho Bank, Ltd.*,
No. 12 Civ. 3419, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ...........................................13

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972)...................................................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) (*LIBOR IV*) .................7, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) (*LIBOR VI*)............7, 10, 13

*O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on Sept. 11, 2001*),
714 F.3d 659 (2d Cir. 2013).............................................................................................5, 8, 12

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*,
484 U.S. 97 (1987)...................................................................................................................14

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
720 F.3d 490 (2d Cir. 2013).....................................................................................................14

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................................................................................................................5

*Selman v. Harvard Med. Sch.*,
494 F. Supp. 603 (S.D.N.Y. 1980).............................................................................................5

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)....................................................................................................................11

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014).......................................................................................................6

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..............................................................................................................11

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015)...........................................................................1, 5, 6, 7

*United States v. Rosenblatt*,
554 F.2d 36 (2d Cir. 1977).......................................................................................................13

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)......................................................................................1, 7, 9, 12, 13, 15

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016).................................................................2, 7, 8, 9, 10, 11, 12

**TABLE OF AUTHORITIES** (*continued*)

<u>Page(s)</u>

**Statutes**

15 U.S.C. § 22...........................................................................................................14

18 U.S.C. § 2333(a)....................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2)......................................................................................2, 5, 15

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 14

## PRELIMINARY STATEMENT

Plaintiffs are out-of-state entities that allegedly purchased the generic heart medication Propranolol from unspecified Defendants at artificially high prices allegedly set by agreement between competitors, and Plaintiffs seek treble monetary damages for the overcharges they purportedly suffered.  Their Complaints are properly dismissed as to Heritage Pharmaceuticals Inc. ("Heritage") and Upsher-Smith Laboratories, Inc. ("Upsher-Smith") (together, the "Out-of-State Defendants") because the exercise of personal jurisdiction over the asserted claims would violate constitutional due process.[1]

*First*, the Out-of-State Defendants are not subject to general personal jurisdiction in New York because Heritage, incorporated in Delaware with its principal place of business in New Jersey, and Upsher-Smith, incorporated in Minnesota with its principal place of business in Minnesota, are not "essentially at home" in this State.  *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167-68 (S.D.N.Y. 2015).

*Second*, the Out-of-State Defendants are not subject to specific personal jurisdiction in New York on Plaintiffs' claims, because they have not alleged "suit-related conduct" by the Out-of-State Defendants that "create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014).  Whether a forum state may assert specific jurisdiction over a nonresident defendant depends "on the relationship among the defendant, the forum and the litigation."  *Id.*  Yet other than through impermissible conclusory assertions, the Complaints here fail to allege *any* facts connecting the Out-of-State Defendants' "in-state activity" with the "wrongs for which the [P]laintiffs here seek redress," thus failing to show that Plaintiffs' claims

---

[1] Heritage and Upsher-Smith, along with all other Defendants in these actions, also file today a separate motion to dismiss the Complaints ("FWK Compl." (16 Civ. 9901, ECF 1); "CCI Compl." (17 Civ. 78, ECF 1)) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), supported by a separate memorandum of law.

"arise from [the Out-of-State Defendants'] purposeful contacts with the forum." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 342-43 (2d Cir. 2016). Nor can Plaintiffs establish specific jurisdiction over Heritage and Upsher-Smith by contending that the alleged conspiracy to fix Propranolol prices had "effects" in New York. Plaintiffs are, of course, not New York residents, and even if they were, the Complaints lack allegations that Heritage or Upsher-Smith directed any effect-causing action into this forum.

Accordingly, the Complaints warrant dismissal as to Heritage and Upsher-Smith under Rule 12(b)(2) for lack of personal jurisdiction.

## FACTUAL BACKGROUND

### A.    The Named Plaintiffs' Alleged Propranolol Purchases

Plaintiff FWK Holdings, LLC ("FWK") is organized in and located in Illinois, and asserts a claim assigned to it by Frank W. Kerr Company ("Kerr"), currently in bankruptcy proceedings in the Eastern District of Michigan. FWK Compl. ¶ 36. Plaintiff César Castillo, Inc. is incorporated "under the laws of the Commonwealth of Puerto Rico" and headquartered in Puerto Rico. CCI Compl. ¶ 27. Plaintiffs allegedly "purchased" Propranolol "directly from one or more of the Defendants" at unspecified prices, in unspecified locations, at unspecified times, resulting in Plaintiffs' alleged payment of "more for" the drug "than they . . . would have paid" absent the misconduct alleged. FWK Compl. ¶¶ 36, 127; CCI Compl. ¶¶ 113, 122. The "average" Propranolol tablet prices rose artificially, Plaintiffs allege, "following" a February 2015 generic pharmaceutical trade association meeting in Miami. FWK Compl. ¶¶ 8-9, 87; CCI Compl. ¶¶ 11, 88.

### B.    Defendants' Alleged Conduct And New York Contacts

Heritage is a Delaware corporation with its principal place of business in Eatontown, New Jersey. FWK Compl. ¶ 48; CCI Compl. ¶ 31. Heritage allegedly "sold Propranolol tablets

in this District and throughout the United States" during the relevant putative class period for tablets, namely, from February 1, 2015 (CCI Compl. ¶¶ 3, 31) or February 18, 2015 (FWK Compl. ¶¶ 4, 48) to the present.

Upsher-Smith is a Minnesota corporation with its principal place of business in Maple Grove, Minnesota.  FWK Compl. ¶ 50; CCI Compl. ¶ 38.  Upsher-Smith allegedly "sold Propranolol capsules in this District and throughout the United States" during the relevant putative class period for capsules, namely, from December 1, 2013 (CCI Compl. ¶ 3) or December 18, 2013 (FWK Compl. ¶ 4) to the present.

Plaintiffs do not allege that they purchased Propranolol from Heritage or Upsher-Smith in New York (or anywhere else), or that Plaintiffs communicated with Heritage or Upsher-Smith concerning Propranolol or any other drug in New York (or anywhere else).  While some other Defendants allegedly have offices or headquarters in New York (FWK Compl. ¶¶ 40, 44-46, 49; CCI Compl. ¶¶ 29, 30, 34), the Complaints do not assert that Heritage or Upsher-Smith communicated with personnel at any New York office or facility about Propranolol pricing. Indeed, Plaintiffs do not describe any particular communications between Heritage, Upsher-Smith, or any other Defendants about Propranolol prices at all.

The Complaints refer (FWK Compl. ¶¶ 34, 105; CCI Compl. ¶ 106) to a Securities and Exchange Commission filing by the alleged parent of Defendant Mylan, Inc., Mylan, N.V., stating that the company is cooperating with the U.S. Department of Justice's inquiry "relating to the marketing, pricing and sale of our generic Cidofovir, Glipizide-metformin, Propranolol and Verapamil products and any communications with competitors about such products."  Mylan, N.V. *Form 10-Q* 58 (Nov. 9, 2016).  Plaintiffs also repeat assertions from government agency-commenced pending proceedings in courts outside New York.  The first set of assertions are

from filings by the Department of Justice in pending criminal proceedings in the Eastern District

of Pennsylvania against two former Heritage executives who since the filing of the Complaints

have pleaded guilty to charges they conspired in violation of the Sherman Act to fix prices of

two generic drugs other than Propranolol (the antibiotic Doxycycline Hyclate Delayed Release,

and the diabetes medicine Glyburide).  FWK Compl. ¶¶ 15, 24, 27-28; CCI Compl. ¶¶ 17, 110.[2]

The second set of assertions are from a complaint by state attorneys general in a pending civil

suit in the District of Connecticut concerning alleged conspiracies for those two drugs

(Doxycycline Hyclate Delayed Release and Glyburide).  FWK Compl. ¶¶ 16, 20; CCI Compl.

¶¶ 18, 111.

Plaintiffs do not allege that the Pennsylvania or Connecticut proceedings or the

Department of Justice inquiry described in the Mylan, N.V. filing have alleged misconduct

concerning Propranolol by Heritage or Upsher-Smith in New York (or anywhere else).

### C.    Other Jurisdictional Allegations In The Complaints

The Complaints contain conclusory jurisdictional allegations as to Defendants without

describing the grounds for personal jurisdiction as to Heritage, Upsher-Smith or any other

particular company.  Those include conclusory statements that personal jurisdiction arises from

"sale and distribution" of Propranolol "in this District" and that the alleged conspiracy was

"directed at . . . causing injury to" persons "residing in" this District.  FWK Compl. ¶ 59; CCI

Compl. ¶ 24.

---

[2]  *United States v. Glazer*, E.D. Pa. No. 2:16-cr-506, Doc. 1 (Information, filed Dec. 12, 2016); *id.*, Doc. 15 (minute entry for plea, filed Jan. 9, 2017); *United States v. Malek*, E.D. Pa. No. 2:16-cr-508, Doc. 1 (Information, filed Dec. 13, 2016); *id.*, Doc. 14 (minute entry for plea, filed Jan. 10, 2017).

## LEGAL STANDARD

Jurisdiction *in personam* is assessed under Rule 12(b)(2) defendant-by-defendant, and allegations against defendants *as a group* are insufficient.  *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts").  To satisfy due process, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  The plaintiff bears the burden of alleging "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *O'Neill v. Asat Trust Reg.* (*In re Terrorist Attacks on Sept. 11, 2001*), 714 F.3d 659, 673 (2d Cir. 2013) (citation and internal quotation marks omitted). When deciding a Rule 12(b)(2) motion, courts will not draw "argumentative inferences in the plaintiff's favor," or "accept as true a legal conclusion couched as a factual allegation." *O'Neill*, 714 F.3d at 673.  Put another way, "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." *SPV OSUS*, 114 F. Supp. 3d at 167 (citation omitted).

Importantly, "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action.  Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ. 7717, 2014 WL 904650, at *6 (S.D.N.Y.  Mar. 7, 2014) (citing *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980)).

## ARGUMENT

The exercise of personal jurisdiction here would violate constitutional due process because neither Heritage nor Upsher-Smith is subject to general or specific personal jurisdiction in New York as to Plaintiffs' claims arising from their alleged purchases of Propranolol.  That is, personal jurisdiction over the claims in the Complaints is unavailable because it would "offend traditional notions of fair play and substantial justice."  *SPV OSUS*, 114 F. Supp. 3d at 169 (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998), in turn quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

## I.   THE OUT-OF-STATE DEFENDANTS ARE NOT SUBJECT TO GENERAL PERSONAL JURISDICTION IN NEW YORK.

As this Court has recognized, *see SPV OSUS*, 114 F. Supp. 3d at 167-68, general jurisdiction is appropriate "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, (2011)).  A corporate defendant's "place of incorporation and principal place of business" are the paradigmatic places where it is "fairly regarded as at home" and thus subject to jurisdiction for claims that arose outside the forum.  *Id*. at 760, 761 n.19 (citing *Goodyear*, 564 U.S. at 924); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).  The correct inquiry is thus whether a defendant's contacts with the forum "shift the company's primary place of business (or place of incorporation) away from" its home jurisdiction.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224-26 (2d Cir. 2014); *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016).

General jurisdiction is unavailable as to the Out-of-State Defendants in this case under *Daimler*.  Neither Heritage nor Upsher-Smith is incorporated in or has its principal place of

6

business in New York.  Heritage is a Delaware corporation with its principal place of business in

New Jersey.  FWK Compl. ¶ 48; CCI Compl. ¶ 31.  Upsher-Smith is a Minnesota corporation

with its principal place of business in Minnesota.  FWK Compl. ¶ 50; CCI Compl. ¶ 38.  The

Out-of-State Defendants are thus not "essentially at home" or "centered" in New York, and

hence are not subject to jurisdiction in New York for claims unrelated to their contacts with the

forum.  *Waldman*, 835 F.3d at 333-34; *Gucci*, 768 F.3d at 135.  Additionally, nothing in the

Complaints would support classifying these actions as "truly 'exceptional' case[s]" warranting

exercise of general jurisdiction outside of *Daimler*'s rule.  *SPV OSUS*, 114 F. Supp. 3d at 168;

*Brown*, 814 F.3d at 627.

## II.   THE OUT-OF-STATE DEFENDANTS ARE NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN NEW YORK ON PLAINTIFFS' CLAIMS.

Specific jurisdiction "depends on in-state activity that '*gave rise to the episode-in-suit*.'"

*Waldman*, 835 F.3d at 331 (quoting *Goodyear*, 564 U.S. at 923) (in turn quoting *Int'l Shoe*, 326

U.S. at 317) (emphasis in original).  Thus, for a court to exercise specific jurisdiction over a

defendant, "the defendant's *suit-related* conduct must create *a substantial connection with the*

*forum State*," "the relationship must arise out of contacts that the 'defendant *himself*' creates with

the forum State," and the contacts must be "with the forum State itself, not . . . with persons who

reside there."  *Walden*, 134 S. Ct. at 1121-22 (first emphasis added) (citation omitted); *see*

*Waldman*, 835 F.3d at 335.  The "proper question" in determining specific jurisdiction "is not

where the plaintiff experienced a particular injury or effect but whether the defendant's conduct

*connects him to the forum* in a meaningful way."  *Walden*, 134 S. Ct. at 1125 (emphasis added).

"[S]pecific jurisdiction requires 'no less than a 'but for' connection between the defendant's

forum-directed activities and the claim."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*,

No. 11 MDL 2262, 2016 WL 7378980, at *8 (S.D.N.Y. Dec. 20, 2016) (*LIBOR VI*) (quoting *In*

7

*re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6243526, at *28 (S.D.N.Y. Oct. 20, 2015) (*LIBOR IV*)); *cf. Chew*, 143 F.3d at 29-30 (describing sliding scale requiring but-for connection in some cases and proximate causation in others).

Exercise of specific personal jurisdiction may be valid "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (Sotomayor, J.) (further citation omitted). Alternatively, under the "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984), out-of-forum conduct may suffice where the allegedly tortious actions were "expressly aimed" at the forum and the claims in suit arose out of those actions. *O'Neill*, 714 F.3d at 674. Under that test, the "fact that harm in the forum is foreseeable . . . is insufficient" to confer jurisdiction based on in-forum effects of out-of-forum conduct. *Id*.

Here, the Complaints fail to allege *any* conduct underlying Plaintiffs' claims connecting the Out-of-State Defendants *and New York*, and therefore specific jurisdiction is foreclosed under either the "purposeful availment" or "effects" theories.

> **A.    The "Purposeful Availment" Theory Fails Because Plaintiffs Do Not Allege In-Forum Acts By The Out-Of-State Defendants From Which Their Claims Purportedly Arise.**

Plaintiffs do not allege "purposeful availment" because the Complaints fail to establish any "in-state activity" by the Out-of-State Defendants that "'*gave rise to the episode[s]-in-suit*'" and the "wrongs for which *the [P]laintiffs here* seek redress." *Waldman*, 835 F.3d at 331, 342 (emphases added).

Plaintiffs may establish purposeful availment by each Defendant only by showing that Plaintiffs' claims "arise from" that Defendant's "purposeful contacts with the forum." *Id.* at 343. That is clear from *Waldman*, where the Second Circuit applied *Walden* in overturning, for want

of personal jurisdiction, a jury verdict finding defendant Palestinian organizations liable under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), for six terror attacks committed "in and around" Jerusalem by nonparties affiliated with those organizations.  *Id*. at 335.  The maintenance by one of the organizations of an office in the forum that lobbied the U.S. Government for policy changes, the court concluded, did not support purposeful availment, because "*[t]he plaintiffs' claims* did not arise from the defendants' purposeful contacts with the forum," and "*[t]he plaintiffs' claims* did not arise from any activity by the defendants in this forum."  *Id.* at 343 (emphases added).  That is, in applying for the first time *Walden*'s teaching that a "defendant's suit-related conduct must create a substantial connection with the forum State," 134 S. Ct. at 1121, the Second Circuit interpreted "suit-related conduct" to refer to conduct "that could have subjected [the defendant] to liability," 835 F.3d at 335—and found no such conduct within the forum.  *See also id.* at 337 (jurisdiction *in personam* lacking where plaintiffs had not shown "a basis to conclude" either "that the defendants participated in the[] [liability-creating] acts" in the forum "or that their liability for these acts resulted from their actions that did occur" in the forum).

Here, similarly, the Complaints are entirely devoid of any facts connecting the "episode[s]-in-suit" underlying *Plaintiffs' claims* and the *Out-of-State Defendants* with the forum by alleging conduct *in New York* that "could have subjected" Heritage or Upsher-Smith "to liability" to Plaintiffs.  The Complaints allege only that Plaintiffs purchased Propranolol from unspecified Defendants, at unspecified times and places,[3] at unspecified prices, and that Plaintiffs seek to recover the "overcharge" damages from their payments.  FWK Compl. ¶ 127; CCI Compl. ¶¶ 113, 122.  Notably, the Complaints do not describe any *actual* acts by Heritage or

---

[3]  The Complaints do not allege that Heritage sold Propranolol tablets during the entire putative class period, nor could they, because Heritage did not.

Upsher-Smith in New York giving rise to Plaintiffs' purported damages.  Nor do Plaintiffs

identify a single communication in New York concerning any such Propranolol purchases by

Plaintiffs.  For their part, the assertions copied from the allegations by the Department of Justice

and the state attorneys general in the pending federal court proceedings in Pennsylvania and

Connecticut also do not describe acts by Heritage concerning Propranolol pricing in New York

(or anywhere else).  FWK Compl. ¶¶ 15, 24, 27-28 (Pennsylvania); CCI Compl. ¶¶ 17, 110

(same); FWK Compl. ¶¶ 16, 20 (Connecticut); CCI Compl. ¶¶ 18, 111 (same).  Plaintiffs have

thus provided no basis for concluding that the Out-of-State Defendants "purposefully availed"

themselves of this forum so as to give rise to Plaintiffs' claims and thereby establish specific

jurisdiction in this forum.

Indeed, the purposeful availment theory fails against the Out-of-State Defendants,

because from all that can be gleaned from the Complaint, even if the Out-of-State Defendants

had never sold Propranolol in New York, Plaintiffs still would have alleged "overcharges"

stemming from conduct by other companies.  *See, e.g.*, FWK Compl. ¶ 127.  In other words,

Plaintiffs' claim would exist independent of any forum-directed conduct by Heritage or Upsher-

Smith, so their forum-directed conduct was not the cause of the alleged overcharges to Plaintiffs;

there is no "'but for' connection."  *LIBOR VI*, 2016 WL 7378980, at *8; *see Waldman*, 835 F.3d

at 335, 337, 341 (since "suit-related conduct" refers to conduct "that could have subjected [the

defendant] to liability," each defendant's minimum contacts with the forum must be at least a

but-for cause of that defendant's liability).

Having refused to describe their transactions with Defendants or any forum-directed

conduct by Heritage or Upsher-Smith underlying their asserted injuries, Plaintiffs cannot

compensate for their failure to plead the facts pivotal to specific jurisdiction over their claims by

resting on generic allegations about other persons not before the Court.  Thus, to the extent *unnamed* members of the putative class bought Propranolol from Heritage or Upsher-Smith in this State, the allegations concerning those *unnamed* class members cannot establish personal jurisdiction over the Out-of-State Defendants.  *See Beach*, 2014 WL 904650, at *6.  Of course, Plaintiffs also cannot assert injury based on those unknown persons not before the Court.[4]

### B. The "Effects" Test Fails Because Plaintiffs Do Not Allege That The Out-Of-State Defendants Took Express Aim At This Forum.

The Complaint also fails to adequately allege specific personal jurisdiction over Plaintiffs' claims through the "effects" test.  Under that test, "the defendant must 'expressly aim[ ]' his conduct at" the forum, *Waldman*, 835 F.3d at 337, which means plaintiffs must "plead facts demonstrating that the [misconduct alleged] *was done with the express aim* of causing an effect in New York" and that the claims in suit arose out of those actions.  *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *10-11 (S.D.N.Y. Mar. 31, 2015) (emphasis added).  Here—disregarding the conclusory references to in-forum "effects" (FWK Compl. ¶ 59; CCI Compl. ¶ 24)—Plaintiffs have not shown that the Out-of-State Defendants' actions were expressly aimed at New York.  And, indeed, the Complaints do not allege *any* New York transactions involving the Out-of-State Defendants, or even New York-directed communications by them, that gave rise to Plaintiffs' asserted injuries.

Nor do the Complaints allege facts showing that Heritage or Upsher-Smith acted with "calculat[ion] to cause injury" in New York in particular.  *See Calder*, 465 U.S. at 789-90.  In that regard, the Second Circuit has now clarified that where the alleged tortious acts occurred

---

[4] Article III of the U.S. Constitution compels focusing on the named plaintiffs:  They lack standing to sue based on the alleged injuries of nonparties, including unnamed members of the putative class.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)).

outside the forum and targeted "people from all over," even where the alleged misconduct "continuously hit" persons originating in the forum, it cannot be said that the forum is "the focal point of the torts alleged" where no nonspeculative allegations show the defendant calculated to cause injury *in the forum*.  *See Waldman*, 835 F.3d at 337-38, 340 (internal quotation marks omitted).  The Complaints do not show that New York was "the focal point" of any such calculated conduct by Heritage or Upsher-Smith.

Even if the Complaint were construed to allege that the Out-of-State Defendants knew of or foresaw impacts on persons in New York (assuming there were any before the Court, which there are not), such "mere knowledge" would not meet the "express aim" requirement.  *See Waldman*, 835 F.3d at 339 ("In *O'Neill*, this Court emphasized that the mere 'fact that harm in the forum is foreseeable' was 'insufficient for the purpose of establishing specific personal jurisdiction over a defendant") (quoting 714 F.3d at 674).  Plaintiffs are not New York citizens, and if they had been, such citizenship, standing alone, would not have been enough to confer specific jurisdiction in New York.  After all, "[d]ue process requires that a defendant be haled into court in a forum State based on *his own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.'"  *Waldman*, 835 F.3d at 339 (indirectly quoting *Walden*, 134 S. Ct. at 1123) (emphasis added).

### C.   The Conspiracy Alleged Cannot Sustain Vicarious Personal Jurisdiction Over The Out-Of-State Defendants.

The Complaints also do not provide any basis for subjecting the Out-of-State Defendants to personal jurisdiction vicariously through the alleged in-forum conduct of other Defendants alleged to have New York offices or headquarters.  FWK Compl. ¶¶ 40, 44-46, 49; CCI Compl. ¶¶ 29, 30, 34.  To begin with, even if a conspiracy theory of jurisdiction were available, the

Complaints do not plead facts meeting the requirements of such a theory.  Bald assertions of conspiracy with in-forum conspirators cannot suffice to show specific jurisdiction.  *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, J.) ("mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator" absent allegation of partnership with "general supervision" relationship between them).  In addition to omitting allegations of acts by Heritage, Upsher-Smith, or the other Defendants in New York that give rise to Plaintiffs' claims, the Complaints also omit allegations that any such acts in New York were within "the scope of the conspiratorial agreement" alleged, and those omissions are fatal.  *LIBOR VI*, 2016 WL 7378980, at *4 (citing *United States v. Rosenblatt*, 554 F.2d 36, 39 (2d Cir. 1977)); *see 7 W. 57th St.*, 2015 WL 1514539, at *12-13 (rejecting conclusory effort to invoke conspiracy theory of specific jurisdiction); *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) (same).

In any event, the conspiracy theory of jurisdiction is incompatible with due process here, because personal jurisdiction "must arise out of contacts that the 'defendant *himself* creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis by the Court)).  That means personal jurisdiction consistent with the Due Process Clause cannot be obtained over Heritage or Upsher-Smith based on the alleged conduct of other Defendants.  *Cf. LIBOR VI*, 2016 WL 7378980, at *12 (declining to opine "as to whether conspiracy jurisdiction survives as a doctrine after" *Walden*).

## III.   A THEORY OF "NATIONWIDE" CONTACTS CANNOT VALIDLY CONFER JURISDICTION HERE.

To the extent Plaintiffs attempt to allege personal jurisdiction based on the contacts between the Out-of-State Defendants "throughout the United States" as a whole instead of

contacts with New York, Plaintiffs appear to be relying upon a nationwide service of process statute.  FWK Compl. ¶ 59; CCI Compl. ¶ 24; *See* 15 U.S.C. § 22 (Clayton Act).  It is undecided whether personal jurisdiction under a "nationwide service of process" theory permissibly hinges on contacts with the whole United States (a so-called "nationwide contacts" analysis), or on contacts with the particular forum (here, New York).  *Gucci*, 768 F.3d at 142 n.21; *cf. LIBOR IV*, 2015 WL 6243526, at *23 (taking pre-*Daimler* lower court decisions as allowing "national contacts approach" but noting *Gucci* categorized question as undecided).  But Plaintiffs cannot invoke the Clayton Act's service of process provisions because the antitrust claims fail on the merits, as explained in today's separate Rule 12(b)(6) motion to dismiss by all Defendants.  *See 7 W. 57th St.*, 2015 WL 1514539, at *7 n.2 (inadequately pleaded RICO and antitrust claims invalidate reliance on corresponding statutory "nationwide personal jurisdiction provisions"); *see also ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (citing *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012)).

In any event, *Daimler* compels the rejection of the "nationwide contacts" approach as inadequate under the Due Process Clause, and to the extent the Clayton Act purports to provide otherwise, it cannot constitutionally be applied here to the Out-of-State Defendants.[5]  Contrary to certain pre-*Daimler* cases in the lower courts, *Daimler* rejected the notion that due process can be reduced to a matter of sovereignty.  *See* 134 S. Ct. at 753.  Instead, the correct focus is on fundamental fairness to defendants.  *See id.*, 134 S. Ct. at 761-62; *Burger King Corp.*, 471 U.S.

---

[5]  Notably, the Supreme Court has never endorsed the "nationwide contacts" theory, instead twice declining, prior to *Daimler*, to rule on its constitutionality under the Due Process Clause.  *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987) (Court again had "'no occasion' to consider the constitutional issues raised" by theory that "a federal court could exercise personal jurisdiction . . . based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits") (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 n.* (1987)).

at 472; *Walden*, 134 S. Ct. at 1125 n.9 (principal aim of "minimum contacts" inquiry is protection of "the liberty of the nonresident defendant").  Due process thus tolerates assertion of personal jurisdiction *only* when defendants have sufficient contacts with the *particular forum* in which the plaintiff has sued.  Again, the Complaints fail to show such sufficient suit-related contacts substantially connecting Heritage or Upsher-Smith with New York.

## CONCLUSION

The Court should dismiss the Complaint as to Heritage and Upsher-Smith under Rule 12(b)(2) with prejudice.

Dated:   New York, New York
        January 27, 2017

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ D. Jarrett Arp*
D. Jarrett Arp
Melanie L. Katsur
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9527
jarp@gibsondunn.com
mkatsur@gibsondunn.com

Indraneel Sur
200 Park Avenue
New York, New York  10166
Telephone: (212) 351-4000
Facsimile: (212) 716-0875
isur@gibsondunn.com

***Attorneys for Defendant Heritage Pharmaceuticals Inc.***

KIRKLAND & ELLIS LLP

*/s/ Jay P. Lefkowitz., P.C.*
Jay P. Lefkowitz., P.C.
Devora W. Allon
Nathan E. Taylor
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
lefkowitz@kirkland.com
devora.allon@kirkland.com
nate.taylor@kirkland.com

***Attorneys for Defendant Upsher-Smith Laboratories, Inc.***