# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FWK HOLDINGS, LLC, on behalf of itself and all other similarly situated, <br><br>        Plaintiff, <br><br> v. <br><br> ACTAVIS ELIZABETH, LLC, *et al.,* <br><br>        Defendants. | Civil Action No. 1:16-cv-9901-JSR |
| CÉSAR CASTILLO, INC., individually and on behalf of all those similarly situated, <br><br>        Plaintiff, <br><br> v. <br><br> ACTAVIS ELIZABETH, LLC, *et al.*, <br><br>        Defendants. | Civil Action No. 1:17-cv-0078-JSR |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO HERITAGE PHARMACEUTICALS INC.'S AND UPSHER-SMITH LABORATORIES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................1

II.   FACTUAL BACKGROUND ..........................................................................1

III.  ARGUMENT .................................................................................................5

     A.    Personal Jurisdiction in Federal Antitrust Cases is Determined by
           Defendants' Contacts with the Entire United States............................................6

     B.    Defendants are Subject to Specific Personal Jurisdiction in New York............10

     C.    Plaintiffs are Entitled to Jurisdictional Discovery if the Existing Record is
           Insufficient to Establish Personal Jurisdiction...................................................16

IV.   CONCLUSION.............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992) ..................15

*Andre Emmerich Gallery, Inc. v. Segre*, 1997 WL 672009, at *6 (S.D.N.Y. Oct. 29, 1997).....15

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 439 n.16
  (S.D.N.Y. 1996) ..............................................................................................................................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002)....12, 13

*Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053,
  1060 (D. Conn. 2004) .....................................................................................................................7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..............................................................8

*Calder v. Jones*, 465 U.S. 783 (1984) .......................................................................................14

*Chew v. Dietrich*, 143 F.3d 24, 28 nn. 3 & 4 (2d Cir. 1998) ..............................................7, 8, 9

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ..................... 11-12, 13

*Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 585 (E.D.N.Y. 1998) ..........................15

*Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, 2016 WL 7188792, at *6
  (S.D.N.Y. Dec. 2, 2016) ..................................................................................................................6

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) .............................................13

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ................................................................8, 9, 10

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) ................................7

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) .............................. 13-14

*Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 449 (2d Cir. 1978) ...........................17

*Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 434 (E.D.N.Y. 2012).............15

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) ..........................................8, 9

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 285
  (S.D.N.Y. 2000) ............................................................................................................................7, 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) ................10

*In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ................................................................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *3 n.2 (S.D.N.Y. Mar. 31, 2016) ................................................................. 10, 12, 14-15

*In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ............................................................................9, 10, 16

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) ..........................15

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013) .................14

*In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, at *4 (E.D.N.Y. July 18, 2012) ........... 6-7

*International Shoe Co. v. Washington*, 326 U. S. 310, 320 (1945) .........................................7, 8

*Jarolim v. Akris Inc.*, 2015 WL 5821094, at *5 (S.D.N.Y. Sept. 9, 2015) ...............................13

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) ..................................................13

*Leon v. Shmukler*, 992 F. Supp. 2d 179, 194–95 (E.D.N.Y. 2014) ..........................................17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) ....13, 14

*Mariash v. Morrill*, 496 F.2d 1138, 1143–44 (2d Cir. 1974) ............................................... 9-10

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ..................................5

*Motorola Credit Corp. v. Uzan*, 2002 WL 31319932, (S.D.N.Y. Oct. 16, 2002) ....................16

*SEC v. Morton*, 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011) .......................................9

*SEC v. Softpoint, Inc.*, 2001 WL 43611, at *5 (S.D.N.Y. Jan.17, 2001) ..................................10

*SEC v. Straub*, 921 F.Supp.2d 244, 253 (S.D.N.Y. 2013) .........................................................9

*SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) ........................................................9

*Smith v. United States*, 554 F. App'x 30, 32 n.3 (2d Cir. 2013) ...............................................17

*SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *2 (S.D.N.Y. May 26, 2016) ............5, 6, 8

*Tadayon v. DATTCO, Inc.*, 2016 WL 1257798, at *6 (D. Conn. Mar. 30, 2016) ....................15

*Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 314 (2d Cir. 1982) ..................................................................................................9

*Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ......................................5

*Walden v. Fiore*, 134 S.Ct. 1115 (2014) ..................................................8, 9, 15

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ...........8, 12, 14

*Wal-Mart Stores Inc. v. Visa, U.S.A.*, 396 F.3d 96, 118 (2d Cir. 2005) ....................14

*Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283–84 & n.9 (E.D.N.Y. 2016) .................................................................................................10

## STATUTES

15 U.S.C. § 22..........................................................................................................6

N.Y. C.P.L.R. § 302(a) ...................................................................................7, 13

## RULES

Fed. R. Civ. P. 4(k)(2), Adv. Comm. Note ..............................................................7

## PRELIMINARY STATEMENT

Defendants Heritage Pharmaceuticals Inc. ("Heritage") and Upsher-Smith Laboratories, Inc. ("Upsher") (collectively, "Defendants") seek the dismissal of Plaintiffs' claims against them pursuant to Rule 12(b)(2) for lack of personal jurisdiction based on a facile premise that perhaps no Second Circuit court has ever accepted, *i.e.*, where Plaintiffs' cause of action arises from a federal statute that provides for nationwide service of process, it is Defendants' connections with the state—and not the entire United States—that govern the Court's exercise of personal jurisdiction over them. Defendants cite no case in which a Second Circuit court has accepted that argument, and Plaintiffs are not aware of any such case. In fact, Second Circuit cases are overwhelmingly to the contrary.

But even if this Court were to accept Defendants' erroneous legal argument, Defendants' wide-ranging activities in New York, particularly their New York sales of the products at issue in this case, and Upsher's repeated meetings with co-conspirators in New York, would establish this Court's personal jurisdiction over them. Defendants' motion to dismiss for lack of personal jurisdiction should be denied.  Alternatively, Plaintiffs should be afforded the opportunity to conduct jurisdictional discovery before the Court dismisses either of these Defendants from this case.

## FACTUAL BACKGROUND

Upsher and Heritage both sold substantial amounts of propranolol in New York throughout the relevant period. That is reflected on the website of the Centers for Medicare and Medicaid Services, which compiles data as to drug expenditures by state Medicaid agencies. *See* Declaration of Michael Augusteijn ("Augusteijn Decl.") ¶ 4. That data is generally broken down by manufacturer and drug type. *Id.* ¶ 6. It reflects that New York Medicaid authorities received

over 103,000 claims for Heritage propranolol products between 2010 and September of 2016, and over 16,000 claims for Upsher propranolol products during the same period. *Id.* ¶ 8. Those figures do not include purchases of propranolol paid for by Medicare, private insurers or directly by consumers. *Id.* ¶ 9.

Upsher describes itself as "among the largest generic companies in the world, with customers *throughout the United States* and over 100 countries." Brief of Generic Manufacturers, *FTC v. Actavis, Inc.*, No. 12-416, at 1 (U.S. Sup. Ct., Feb. 28, 2013) (emphasis added). Its website references three dozen products, all of which it presumably sells in New York.[1] Upsher is an active member of the National Association of Chain Drug Stores ("NACDS"). *See* CCI Compl. ¶ 65. Its senior officers regularly attended NACDS conferences and trade shows. Upsher and other defendants who attended these and similar events sponsored by other trade groups generally used them to facilitate their discussions as to upcoming bids, specific generic drug markets, pricing strategies and pricing terms in their contracts with customers, and other sensitive information. *See generally id.* ¶¶ 64-73; FWK Compl. ¶¶ 74-81.

NACDS sponsors a Week in New York City and Foundation Dinner in December of each year.[2] Plaintiffs have obtained documents from NACDS reflecting that high-ranking Upsher officers registered for and presumably attended one or both of the events each year during the relevant time period.[3]

| Name and Title | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|
| Scott Hussey, *SVP Sales* | ✓ | ✓ | ✓ | ✓ |
| Brad Leonard, *Sr. Dir. Nat'l Accts* | | | ✓ | ✓ |

---

[1] *See* http://www.upsher-smith.com/our-products/products-a-z/.

[2] *See* Declaration of Bart D. Cohen ("Cohen Decl."), Ex. 1.

[3] *See* Cohen Decl., Ex. 2.

2

| Name and Title | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|
| Jim Maahs, *VP Comm'l Portfolio Mgmt.* | ✓ | ✓ | ✓ | ✓ |
| Rusty Field, *President* | | | | ✓ |
| Mike McBride, *VP Partner Relations* | ✓ | ✓ | ✓ | ✓ |

Upsher maintains ongoing contacts with New York via its sales and promotional activities. Amanda Strow identifies herself on LinkedIn as a "CNS Account Sales Manager at Upsher-Smith" and "Specialty representative for Manhattan, Brooklyn and Queens, NY."[4] Upsher has also entered into a well-publicized partnership with a New York dermatologist, Dr. Doris Day, to act as "Brand Ambassador" for Upsher skin care products.[5] In 2015, Upsher cited Dr. Day in its promotional materials, claiming that she "recommends [Upsher products] to her patients."[6] Upsher has also employed an advertising agency based in Saratoga Springs.[7]

In late 2015, Upsher's Chief Scientific Officer, William Pullman, promoted a joint research venture with Roche to develop new drugs, based in part at the Roche Innovation Center New York.[8] Beginning in 2006, Upsher pursued patent litigation in this district against Canada-based Apotex, Inc. and Florida-based Apotex Corp., based on a single allegation as to personal jurisdiction: "Upon information and belief, [Defendants] conduct continuous and systematic

---

[4] *See* https://www.linkedin.com/in/amandastrow/.

[5] Associated Press, *Leading Cosmetic Dermatologist Dr. Doris Day Joins AmLactin to Kick Off the "Ultra Skin Performance" Campaign*, Mar. 15, 2012. Cohen Decl., Ex. 3.

[6] Racher Press, Inc., Upsher Laboratories Inc. (Vendor Close-ups), Oct. 19, 2015. Cohen Decl., Ex. 4.

[7] Albany-Colonie Regional Chamber of Commerce, *Two New Employees Join Fingerpaint*, Sept. 6, 2013, (one new hire "completed a graduate internship at Fingerpaint, where she contributed her marketing talents to accounts including … Upsher-Smith … ."). Cohen Decl., Ex. 5.

[8] Biotech Business Week, *Roche And Upsher-Smith Announce License Agreement to Develop Novel VAP-1 Inhibitor*, Dec. 14, 2015.  Cohen Decl., Ex. 6.

business within the state of New York, including this District, and intend to market and sell the accused drug product in New York."[9] That litigation was ultimately resolved in Upsher's favor in 2013. Upsher is also currently under this court's jurisdiction in *Sergeants Benevolent Association Health & Welfare Fund v. Actavis, PLC,* 15-cv-06549-CM (S.D.N.Y., filed Aug. 20, 2015), in which the court denied Upsher's motion to dismiss the case pursuant to Rule 12(b)(6). *Id.*, ECF 107, Sept. 13, 2016.

Heritage is based in Eatontown, New Jersey, less than 20 miles from the New York state line, and less than 30 miles from this courthouse. *See* Compl. ¶ 48; Cohen Decl., Ex. 7. Heritage is registered to do business in New York with the New York State Department of State. Cohen Decl., Ex. 8. Its website highlights its "acquisition, licensing, development, marketing, sale and distribution of generic pharmaceutical products for the U.S. prescription drug market."[10] In a 2013 prospectus, Heritage's parent company, Emcure Pharmaceuticals Ltd., highlighted Heritage's sales to "national drug wholesalers, distributors, cooperatives and chain pharmacies" and "national group purchasing organizations." Cohen Decl., Ex. 9, at 137. In 2015, the Food and Drug Administration announced a nationwide voluntary recall of Heritage products, that "were distributed to hospitals, wholesalers and distributors nationwide …" Cohen Decl., Ex. 10, at 2. Heritage's website identifies over 60 Heritage products in addition to propranolol, all of which Heritage presumably sells in New York.[11]

On December 15, 2016, the Attorneys General of 20 states, including New York State Attorney General Eric Schneiderman, filed a complaint in the District of Connecticut alleging

---

[9] Compl. ¶ 6, *Unigene Labs. v. Apotex, Inc.*, 06-cv-55771-RPP (S.D.N.Y. Jul 24, 2006), ECF 1.

[10] *See* http://www.heritagepharma.com/about.php.

[11] *See* http://www.heritagepharma.com/products.php.

4

that Heritage was the "principal architect and ringleader of a wide-ranging series of conspiracies which included several drug manufacturers …"  Compl. ¶ 10, *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 16-cv-02056 (D. Ct.) (filed Dec. 15, 2016). Attorney General Schneiderman said that "[g]eneric drugs play a critical role in moderating healthcare for all New Yorkers" and that "[c]ompanies that collude and fix prices for generic drugs in order to pad their profits must be held accountable for the very real harm they inflict on New Yorkers' ability to pay for life-saving medications."[12]

## ARGUMENT

Plaintiffs generally need only make a prima facie showing that jurisdiction exists in order to successfully oppose a Rule 12(b)(2) motion. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "[D]istrict courts have 'considerable procedural leeway' in resolving such motions: courts 'may determine the motion on the basis of affidavits alone; or [they] may permit discovery in aid of the motion; or [they] may conduct an evidentiary hearing on the merits of the motion.'" *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *2 (S.D.N.Y. May 26, 2016) (Rakoff, J.) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

This Court further detailed the relevant standards in *SPV Osus*:

> Where the Court "chooses not to conduct a full-blown evidentiary hearing" however, "plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co., 521 F.3d 122, 126* (2d Cir. 2008) (internal quotation marks omitted); *Marine Midland Bank*, 664 F.2d at 904 ("…until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."). A plaintiff can make this showing through its "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New England Tel. Co. v.*

---

[12] *A.G. Schneiderman Files Antitrust Lawsuit With 19 Other States Against Heritage Pharmaceuticals And Other Generic Drug Companies*, Dec. 15, 2016, available at https://ag.ny.gov/press-release/ag-schneiderman-files-federal-antitrust-lawsuit-19-other-states-against-heritage.

> *Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted). And "[i]n evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

*SPV Osus*, 2016 WL 3039192, at *2 (omission added). "A determination regarding personal jurisdiction requires a factual inquiry that goes beyond the complaint, therefore"—unlike a determination of the merits pursuant to Rule 12(b)(6)—"all pertinent documentation submitted by the parties may be considered in deciding the motion." *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, 2016 WL 7188792, at *6 (S.D.N.Y. Dec. 2, 2016) (citation omitted).

Plaintiffs here satisfy that standard merely by virtue of Defendants' presence in the United States. But even if only Defendants' New York contacts were relevant in this context, Plaintiffs' showing to this point would be sufficient to establish the Court's personal jurisdiction over them.

A.    **Personal Jurisdiction in Federal Antitrust Cases is Determined by Defendants' Contacts with the Entire United States.**

Section 12 of the Clayton Act states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22, *cited in* CCI Compl. ¶ 22, FWK Compl. ¶ 57. "Courts within the Second Circuit analyze this provision as two separate but interrelated clauses: the words preceding the semicolon provide a basis for venue, and the words following the semicolon provide that if venue is proper pursuant to the venue clause, *personal jurisdiction may be established through worldwide service of process*." *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, at *4

(E.D.N.Y. July 18, 2012) (emphasis added) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)). No more recent authority changes that rule.

That is because, where a "cause of action is based on a federal question, the due process requirements are derived from the Fifth Amendment, as opposed to the Fourteenth Amendment." *Broadcast Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1060 (D. Conn. 2004). *See also Chew v. Dietrich*, 143 F.3d 24, 28 n.3 (2d Cir. 1998) ("[I]n cases where federal claims are asserted…a strong argument can be made that even where service is made under the forum state's long-arm statute, a federal court may exercise personal jurisdiction as long as such exercise is consistent with the *Fifth Amendment* due process standard.") (emphasis added)[13]; Fed. R. Civ. P. 4(k)(2), Adv. Comm. Note ("These restrictions [on the exercise of territorial jurisdiction by federal courts over persons outside the United States] arise from the Fifth Amendment rather than from the Fourteenth Amendment, which limits state-court reach…").[14] *Cf. Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 285 (S.D.N.Y. 2000) ("*International Shoe* [*Co. v. Washington*, 326 U. S. 310 (1945)] and its progeny, which rest on the Fourteenth Amendment, may not simply be transplanted to limit the exercise of personal jurisdiction in federal question cases.").

---

[13] Defendants here do not claim that service in this case was contrary to New York's long-arm statute, N.Y. C.P.L.R. § 302(a). In fact, it was not. *See infra* § B.

[14] *See also In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 526 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ("[S]ection 22 of the CEA provides for service of process "wherever the defendant may be found ...". This language indicates a congressional intention to extend personal jurisdiction to the limit permitted by the Due Process Clause of the *Fifth Amendment*.") (emphasis added); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 439 n.16 (S.D.N.Y. 1996) ("The limits on personal jurisdiction based on national contacts are contained in the Due Process Clause of the *Fifth Amendment, which governs the federal government*.") (emphasis added).

Conversely, *all* of the appellate cases upon which Defendants improperly rely in this context "rest[s] on the Fourteenth Amendment." *Id. See* Defs.' Brf., at 14-15. In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), "[t]he question presented [was] whether the Due Process Clause of the Fourteenth Amendment precludes the District Court from exercising jurisdiction over Daimler in this case." *Id.* at 751. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), "[t]he question presented" was likewise governed by "the Due Process Clause of the Fourteenth Amendment. *International Shoe Co. v. Washington*, 326 U. S. 310, 320 (1945)." *Id.* at 464. In *Walden v. Fiore*, 134 S.Ct. 1115 (2014), the Court began its substantive analysis by observing that "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Id.* at 1121. *See also id.* (citing *International Shoe*). *See also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (quoting *International Shoe*); *SPV Osus*, 2016 WL 3039192, at *3 (quoting *Gucci* in reference to "*International Shoe* and its progeny") (citation omitted).

The import of the Fifth Amendment/Fourteenth Amendment distinction is best explicated in another case upon which Defendants rely, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016):

> "[T]he due process analysis [for purposes of the court's *in personam* jurisdiction] is basically the same under both the Fifth and Fourteenth Amendments. The principal difference is that *under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered*."

*Id.* at 330 (quoting *Chew*, 143 F.3d at 28 n.4) (emphasis added). That is why a footnote in an earlier Second Circuit opinion—which Defendants cite for the premise that "[i]t is undecided whether personal jurisdiction under a 'nationwide service of process' theory permissibly hinges on contacts with the whole United States…or on contacts with the particular forum"—is

irrelevant. *See* Defs.' Brf., at 14 (citing *Gucci*, 768 F.3d at 142 n.21).[15] And Defendants' claim

that the issue was unresolved as of the holding in *Gucci* is belied in its entirety by their

purporting to resolve the issue strictly by reference to cases that pre-date *Gucci*. *See* Defs.' Brf.,

at 14-15.[16]

That is why Defendants cite no subsequent case in which a court relied on the footnote in

*Gucci* in dismissing a defendant. In fact, district courts in the Second Circuit have maintained

their long-standing policy of assessing defendants' national contacts in cases in which the

governing statutes authorize nationwide service of process. In yet another case upon which

Defendants rely—*In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2015 WL 6243526

(S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*")—the court observed that "courts in this Circuit

commonly hold that '[w]hen the jurisdictional issue flows from a federal statutory grant that

authorizes suit under federal-question jurisdiction and nationwide service of process ... the

Second Circuit has consistently held that the minimum-contacts test in such circumstances looks

to contacts with the entire United States rather than with the forum state.'" *Id.* at *23 (quoting

*SEC v. Straub*, 921 F.Supp.2d 244, 253 (S.D.N.Y. 2013)).[17]

---

[15] Moreover, the *Gucci* panel's claim that "[t]his Court has not yet decided that issue" rests
entirely on a single footnote in *Chew*. *Gucci*, 768 F.3d at 142 n.21 (citing *Chew*, 143 F.3d at 27
n.3). But the footnote in *Chew* addresses only cases in which "federal claims are asserted but
service is effected using the forum state's long-arm statute." *Id.*

[16] *Gucci* was decided in September of 2014. *Walden* and *Daimler* were both decided early that
year.

[17] The string citation following the above-quoted language in *LIBOR IV* reflects the wide-ranging
acceptance of the rule the court adopted: *SEC v. Straub*, 921 F.Supp.2d 244, 253 (S.D.N.Y.2013)
(quoting *SEC v. Morton*, 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011), *report and
recommendation adopted*, 2011 WL 11768504 (S.D.N.Y. Nov. 3, 2011), and citing *Chew v.
Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998); *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir.
1990), *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 314 (2d Cir.
1982), *overruled on other grounds by Frontera Res. Azer. Corp. v. State Oil Co. of Azer.
Republic*, 582 F.3d 393, 398–401 (2d Cir. 2009); *Mariash v. Morrill*, 496 F.2d 1138, 1143–44

The court in *LIBOR IV* properly dismissed *Gucci* after acknowledging it: "Although the Second Circuit recently stated that it had 'not yet decided' whether to consider the defendants' national contacts where a 'federal statute authorizes nationwide service of process,' we are persuaded by the weight of authority that the national contacts approach is both sound and consistent with this Circuit's law." *LIBOR IV*, 2015 WL 6243526, at *23 (citation to *Gucci* omitted). *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *3 n.2 (S.D.N.Y. Mar. 31, 2016) ("*Forex*") (citing *LIBOR IV*, further holding that "[P]ersonal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole"); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283–84 & n.9 (E.D.N.Y. 2016) (collecting cases).

In short, there is no basis for Defendants' claim that this Court should look only to their state rather than national contacts, and they have failed to cite a single case in which a court faced with a statute authorizing nationwide service did likewise. Defendants are "essentially at home" in the United States, and therefore subject to the general jurisdiction of any district court in which any plaintiff might bring federal antitrust claims against them.[18]

## B.      Defendants are Subject to Specific Personal Jurisdiction in New York.

Specific jurisdiction lies in instances "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Defendants' claims that

---

(2d Cir. 1974); *SEC v. Softpoint, Inc.*, 2001 WL 43611, at *5 (S.D.N.Y. Jan.17, 2001)); *see also Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F.Supp.2d 279, 283–85 (S.D.N.Y. 2000).

[18] *See Daimler*, 134 S. Ct. at 751 (establishing standard for general jurisdiction).

Plaintiffs may not assert specific jurisdiction on any of three possible bases are, in all three instances, contrary to the relevant law.

Defendants' argument that they have not purposely availed themselves of the privilege of doing business in New York and could not foresee being haled into court here is belied by the nationwide scope of their business alone. It also improperly relies on an unduly narrow interpretation of the governing principles in this context, which is contrary to Second Circuit law established in cases far more akin to this one than those upon which Defendants rely. For example, the defendant in *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), sold a wide range of counterfeit designer handbags in New York, including a relatively small number of counterfeit Chloé handbags. Queen Bee—like Defendants here—claimed that the court should consider only the conduct directly implicated by the action in assessing personal jurisdiction. The district court agreed, and the Second Circuit reversed:

> We think the district court's characterization of Defendants' non-Chloé sales as constituting purposeful availment of New York only for "some business activity," but not for "the purpose of selling Chloé handbags—the only activity upon which Plaintiffs' complaint is based," too narrowly construes the nexus requirement, which merely requires the cause of action to "relate to" defendant's minimum contacts with the forum. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127–28 (2d Cir. 2002) (ruling that district court "took too narrow a view of the relevant contacts" where it failed to consider for due process purposes defendant law firm's maintenance of an apartment in New York, faxing of newsletters to New York, and work for New York clients as contacts "related to" plaintiff's legal malpractice claim); *see also Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006) (holding that New York long-arm nexus requirement is satisfied unless "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York"). In fact, Queen Bee…further sold…designer merchandise [other than Chloé handbags] to New York consumers. Thus, these additional contacts show that the shipment of a counterfeit Chloé bag was not, as the district court thought, a "one-off transaction," but rather a *part of a larger business plan purposefully directed at New York consumers*.

*Chloé*, 616 F.3d at 167 (emphasis added) (citations omitted). Defendants' conduct at issue in this case is likewise "part of a larger business plan purposefully directed at New York consumers."

More recently, the Second Circuit, in *Waldman*, distinguished the conduct at issue in that case with the conduct at issue in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) (Sotomayor, J.)—which, again, is far more akin to Defendants' conduct in this case than was the conduct at issue in *Waldman*:

> [In *Bank Brussels Lambert*] a client bank sued its lawyers for legal malpractice that occurred in Puerto Rico. This Court held that the Puerto Rican law firm defendant had sufficient minimum contacts with the New York forum and purposely availed itself of the privilege of doing business in New York, because, although the law firm did not solicit the bank as a client in New York, the firm maintained an apartment in New York partially for the purpose of better servicing its New York clients, the firm faxed newsletters regarding Puerto Rican legal developments to persons in New York, the firm had numerous New York clients, and its marketing materials touted the firm's close relationship with the Federal Reserve Bank of New York. "The engagement which gave rise to the dispute here is not simply one of a string of fortunate coincidences for the firm. Rather, the picture which emerges from the above facts is that of a law firm which seeks to be known in the New York legal market, makes efforts to promote and maintain a client base there, and profits substantially therefrom." This Court held that there was "nothing fundamentally unfair about requiring the firm to defend itself in the New York courts when a dispute arises from its representation of a New York client—a representation which developed in a market it had deliberately cultivated and which, after all, the firm voluntarily undertook." In short, the defendants' contacts with the forum were sufficiently related to the malpractice claims that were at issue in the suit. That is not the case here. The plaintiffs' claims did not arise from the defendants' purposeful contacts with the forum. And where the defendant in Bank Brussels Lambert *purposefully and repeatedly reached into New York to obtain New York clients*—and as a result of those activities, it obtained a representation for which it was sued—in this case, the plaintiffs' claims did not arise from any activity by the defendants in this forum.

*Waldman*, 835 F.3d at 342-43 (emphasis added) (citations omitted). Again, Defendants in this case "purposefully and repeatedly reached into New York to obtain New York clients." *Cf.* Defs.' Brf., at 8-9 (likening their conduct to diplomatic efforts of terrorism-sponsoring defendant in *Waldman*). *See also Forex*, 2016 WL 1268267, at **4** (specific jurisdiction exists where "the

12

cause of action arises out of the very activity being conducted, *in part*, inside the forum")

(emphasis added) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

It is telling that Defendants make no reference to New York's long-arm statute, N.Y.

C.P.L.R. § 302(a), which dictates a standard substantially identical to the actual "purposeful

availment" standard.[19] In *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015), the

court stated that standard, in terms consistent with the Second Circuit's holdings in *Chloé* and

*Bank Brussels Lambert*:

> To establish personal jurisdiction under section 302(a)(1), two requirements must
> be met: (1) The defendant must have transacted business within the state; and (2)
> the claim asserted must arise from that business activity. "[P]roof of one
> transaction in New York is sufficient to invoke jurisdiction, even though the
> defendant never enters New York, so long as the defendant's activities here were
> purposeful and there is a substantial relationship between the transaction and the
> claim asserted." *Chloé*, 616 F.3d at 170. Purposeful activities are those with
> which a defendant, through volitional acts, avails itself of the privilege of
> conducting activities within the forum State, thus invoking the benefits and
> protections of its laws.

*Eades*, 799 F.3d at 168 (additional citations omitted).

The court in *Eades* reversed the dismissal of the case, based in part on the following:

> Kennedy's activities in New York—mailing one debt collection notice to
> Eades, engaging in one debt collection phone call with Eades, and mailing a
> summons and complaint to both Plaintiffs—are enough to establish personal
> jurisdiction under § 302(a)(1). On this record, it appears that negotiating debt
> collections constituted a major aspect of [Kennedy's] mission—part of its
> principal reason for being. And Kennedy initiated its debt collection efforts in an
> active (rather than responsive) attempt to collect money from two New York

---

[19] *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) ("'[D]espite the fact
that section 302(a)(1) of New York's long-arm statute and constitutional due process are not
coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically
be prohibited under due process analysis, we would expect such cases to be rare.'") (quoting
*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)); *Jarolim
v. Akris Inc.*, 2015 WL 5821094, at *5 (S.D.N.Y. Sept. 9, 2015) ("As the Second Circuit has
held, the 'application of N.Y. C.P.L.R. § 302(a) meets due process requirements.'") (quoting
*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006)).

residents. Moreover, the Plaintiffs' FDCPA claims arise directly from Kennedy's business communications into New York.

*Eades*, 799 F.3d at 168 (citations omitted). Defendants here have purposely availed themselves of the privilege of doing business in New York.

The "effects test," as fully stated in the Second Circuit, is as follows:

The effects test is a theory of personal jurisdiction typically invoked where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff. In such circumstances, the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013). Defendants base their argument as to the effects test on two erroneous premises. First, they imply—but do not explicitly contend—that the test requires that their conduct was "expressly aimed" *exclusively* at New York. Defs.' Brf., at 10-11. Defendants likewise claim that Plaintiffs must show that New York was "the focal point" of their actions. But no authority dictates such a requirement. The Second Circuit used that phrase in *Waldman* to distinguish the facts in that case from those in *Calder v. Jones*, 465 U.S. 783 (1984), in which a single individual was in fact "the focal point" of the defendants' conduct. *See Waldman*, 835 F.3d at 340. *Cf.* Defs. Brf., at 10-11.

The court in *Forex* relied on Second Circuit precedent in applying the effects test properly: "What is sufficient is a 'plausible inference' based on factual allegations that a defendant acted illegally in the [forum at issue] or "intended his [actions] to cause injury in the [forum at issue].'" *Forex*, 2016 WL 1268267, at *6 (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013)). Based on that standard, the court determined that the defendants were subject to its personal jurisdiction: "Taken as a whole, the [complaint] plausibly alleges suit-related conduct that either took place in the [forum], or had

14

effects expressly aimed inside the [forum] due to the [defendant'] *substantial…businesses here*."
*Forex*, 2016 WL 1268267, at *6 (emphasis added). Defendants in this case likewise do
"substantial business[] here," and are subject to the Court's personal jurisdiction under the
effects test.

Finally—and particularly in light of Upsher's repeated meetings with its competitors in
New York during the relevant period—Defendants' claim that the conspiracy Plaintiffs allege is
insufficient to establish personal jurisdiction over them is both lacking and premature.[20] First,
Defendants' claim that the conspiracy theory of jurisdiction is contrary to *Walden* (*see* Defs.'
Brf., at 13) is belied by the subsequent holding in *Tadayon v. DATTCO, Inc.*, 2016 WL 1257798,
at *6 (D. Conn. Mar. 30, 2016)—which is the most recent in a series of Second Circuit cases that
rely on the theory.[21] Second, Defendants' claim that conspiracy jurisdiction is precluded by
*Walden* relies strictly on language the Court used to preclude plaintiffs from citing their own in-
forum contacts or those of non-parties to establish personal jurisdiction. *See* Defs. Brf., at 13. *Cf.*
*Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-
focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third
parties) and the forum State."). That rule has no bearing on conspiracy jurisdiction, which relies
on the in-forum contact of co-defendant conspirators.

---

[20] The question of whether Upsher's representatives conspired with its competitors at those
meetings is "not proper for resolution in the context of a motion to dismiss." *In re Magnetic
Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

[21] *See also Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 434 (E.D.N.Y. 2012);
*Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 585 (E.D.N.Y. 1998) (conspiracy theory of
jurisdiction comported with due process because a defendant who joined conspiracy in which co-
conspirators acted in the forum inserted himself into the forum); *Andre Emmerich Gallery, Inc.
v. Segre*, 1997 WL 672009, at *6 (S.D.N.Y. Oct. 29, 1997); *Allstate Life Ins. Co. v. Linter Grp.
Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (collecting Second Circuit district court cases).

The court in *LIBOR IV*—which is also post-*Walden*— reaffirmed the application of conspiracy jurisdiction in this context: "The underlying rationale for exercising personal jurisdiction on the basis of conspiracy is that, because co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators." *LIBOR IV*, 2015 WL 6243526, at *29. This Court properly applied that premise in *Motorola Credit Corp. v. Uzan*, 2002 WL 31319932, (S.D.N.Y. Oct. 16, 2002) (Rakoff, J.):

> [T]he Court has already found…that plaintiffs have made a substantial showing that all the defendants were engaged in a common conspiracy to carry out numerous tortious acts, and thus were agents of each other for these purposes. … [V]arious of the defendants utilized their residences in New York as a base from which to commit one or more tortious acts. Given the joint conspiracy, this is more than sufficient to subject all the defendants to personal jurisdiction in New York pursuant to § 302(a).

*Id.*, 2002 WL 31319932, at *1. If Plaintiffs have not yet made such a showing as a matter of fact, the Court need not dismiss Defendants where discovery may facilitate Plaintiffs' making such a showing. *See infra* § C.

### C.    Plaintiffs are Entitled to Jurisdictional Discovery if the Existing Record is Insufficient to Establish Personal Jurisdiction.

Nothing in the recent jurisprudence displaces the long-standing Second Circuit rule allowing for discovery as to personal jurisdiction in instances where such discovery is likely to bear on the issue:

> It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record. *See, e.g., In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a prima facie showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States.…"); *see also APWU v. Potter*, 343

F.3d 619, 627 (2d Cir. 2003) ("[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." (internal quotation marks omitted)); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) ("Although asked to review the district court's initial determination of a prima facie showing of in personam jurisdiction, we conclude that this issue is prematurely before us.... [S]ince the exercise of personal jurisdiction [in this case] is a question of law that turns on a thorough examination of the facts [at issue], we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance.").

*Leon v. Shmukler*, 992 F. Supp. 2d 179, 194–95 (E.D.N.Y. 2014). Plaintiffs in this case are entitled, at a minimum, to discovery regarding Defendants' activities in New York before the Court dismisses them from this action.[22]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Heritage Pharmaceuticals Inc.'s and Upsher-Smith Laboratories, Inc.'s motion to dismiss for lack of personal jurisdiction.  In the alternative, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery.

---

[22] It bears mentioning that Defendants improperly seek dismissal of Plaintiffs' case against them with prejudice. *See* Defs.' Brf., at 15. "However, a dismissal for want of personal jurisdiction is without prejudice." *Smith v. United States*, 554 F. App'x 30, 32 n.3 (2d Cir. 2013) (citing *Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 449 (2d Cir. 1978), for observation that "whether a dismissal is with or without prejudice refers to the res judicata effect of a dismissal").

Dated:  February 10, 2017

Respectfully submitted,

NUSSBAUM LAW GROUP, P.C.

By: _____/s/ Linda P. Nussbaum_____
    Linda P. Nussbaum
    Bart D. Cohen
    Bradley J. Demuth
    Peter E. Moran
    1211 Avenue of the Americas, 40th Floor
    New York, NY  10036
    (917) 438-9102
    lnussbaum@nussbaumpc.com

*Counsel for César Castillo, Inc. and
the Proposed Direct Purchaser Class*

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan
Richard J. Kilsheimer
Jeffrey P. Campisi
Elana Katcher
Joshua Saltzman
850 Third Avenue, 14th Floor
New York, New York 10022
(212) 687-1980
rkaplan@kaplanfox.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Thomas M. Sobol
David S. Nalven
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
tom@hbsslaw.com

VANEK, VICKERS & MASINI P.C
Joseph M. Vanek
David P. Germaine
55 W. Monroe, Suite 3500
Chicago, Illinois 60603
(312) 224-1500
jvanek@vaneklaw.com

*Counsel for FWK Holdings, LLC and the
Proposed Direct Purchaser Class*

18

**CERTIFICATE OF SERVICE**

I, Bart D. Cohen, certify that on this 10th day of February, 2017, a copy of Plaintiffs'

Memorandum of Law in Opposition to Heritage Pharmaceuticals Inc.'s and Upsher-Smith

Laboratories, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction was filed electronically

and served on counsel for all parties with the court's CM/ECF system.

Dated:  February 10, 2017

NUSSBAUM LAW GROUP, P.C.

By _____
Bart D. Cohen
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
(917) 438-9102
bcohen@nussbaumpc.com

*Counsel for César Castillo, Inc. and the*
*Proposed Direct Purchaser Class*