**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- x

FWK HOLDINGS, L.L.C.,

                 Plaintiffs,

v.

ACTAVIS ELIZABETH, LLC, *et al.*,

                 Defendants.

-------------------------------------------------- x

Case No. 16 Civ. 9901 (JSR)

ORAL ARGUMENT REQUESTED

-------------------------------------------------- x

CÉSAR CASTILLO, INC., *et al.*,

                 Plaintiffs,

v.

ACTAVIS ELIZABETH, LLC, *et al.*,

                 Defendants.

-------------------------------------------------- x

Case No. 17 Civ. 78 (JSR)

ORAL ARGUMENT REQUESTED

## REPLY OF HERITAGE PHARMACEUTICALS INC. AND UPSHER-SMITH LABORATORIES, INC. ON THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

GIBSON, DUNN & CRUTCHER LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9527

200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 716-0875

*Attorneys for Defendant*
*Heritage Pharmaceuticals Inc.*

February 17, 2017

KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

*Attorneys for Defendant*
*Upsher-Smith Laboratories, Inc.*

# TABLE OF CONTENTS

Page

A.    The Complaints Fail To Allege A Causal Link Between The Out-of-State Defendants' New York Contacts And The Named Plaintiffs' Injuries Based On Propranolol Purchases. ........................................................................ 2

B.    The Clayton Act's Service Of Process Provision Cannot Cure The Constitutional Defect In The Complaints' Allegations Of Personal Jurisdiction As Applied Here. .............................................................................. 8

C.    Jurisdictional Discovery Is Unwarranted. ............................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015) ....................................................................8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) ................................................................................6

*Beach v. Citigroup Alt. Invs. LLC*,
   No. 12 Civ. 7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014)................................2

*Bertha Bldg. Corp. v. Nat'l Theatres Corp.*,
   248 F.2d 833 (2d Cir. 1957) ................................................................................8

*Brown v. Plata*,
   563 U.S. 493 (2011)...........................................................................................10

*Calder v. Jones*,
   465 U.S. 783 (1984).........................................................................................5, 6

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998) ...............................................................................5, 6

*Chloé v. Queen Bee of Beverly Hills*,
   616 F.3d 158 (2d Cir. 2010) ..............................................................................5, 6

*Clark v. Martinez*,
   543 U.S. 371 (2005).........................................................................................9, 10

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)......................................................................................2, 10

*Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015) ................................................................................7

*Fischbarg v. Doucet*,
   880 N.E.2d 22, 9 N.Y.3d 375 (2007) ...................................................................7

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
   No. 13 Civ. 7789, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016)........................6, 9

*Gucci America, Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)................................................................................9

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011).............................................................................................8

## TABLE OF AUTHORITIES (*continued*)

Page(s)

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ...................................................................................10

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).................................................................................................4

*Langenberg v. Sofair*,
    No. 03 Civ. 8339, 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) ..........................10

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12 Civ. 3419, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015)........................8, 10

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972) ....................................................................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) (*LIBOR VI*)..............5, 8, 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ..................................................................................5, 7

*Rush v. Savchuk*,
    444 U.S. 320 (1980).................................................................................................4

*Societe Generale v. Fed. Ins. Co.*,
    856 F.2d 461 (2d Cir. 1988) ....................................................................................8

*Sonera Holding B.V. v. Çukurova Holding A.*,
    750 F.3d 221 (2d Cir. 2014) (*per curiam*)...............................................................7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................................3

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) .............................................................4

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ...............................................................1, 2, 4, 5, 6, 8, 10

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ......................................................1, 3, 5, 6, 9, 10

*Weiss v. Nat'l Westminster Bank PLC*,
    176 F. Supp. 3d 264 (E.D.N.Y. 2016) ....................................................................9

**Statutes**

15 U.S.C. § 22...................................................................................................................8

Plaintiffs are Illinois and Commonwealth of Puerto Rico entities asserting claims based on purchases of Propranolol at allegedly anticompetitive prices.  But Plaintiffs do not claim to have purchased Propranolol in New York from the Out-of-State Defendants or even communicated in New York with the Out-of-State Defendants (or anywhere else).[1]  Nor do they show that the Out-of-State Defendants' business activities in New York had any causal role in the acts or injuries they set forth in their Complaints.  Giving their submissions the benefit of every doubt, Plaintiffs still have not shown that the Out-of-State Defendants purposefully directed any activities at the forum that relate to or could form the basis of Plaintiffs' claims.  Specific personal jurisdiction always "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (citation omitted).  But there is no such affiliation here.  There has been, as to the named Plaintiffs, no "suit-related conduct" by the Out-of-State Defendants to "create a substantial connection with the forum State."  *Id.* at 1121-22; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 342-43 (2d Cir. 2016).  That should end the inquiry.

While the Opposition tries to side-step the requirements of specific jurisdiction in two ways, neither succeeds.  First, Plaintiffs attempt to rely on unidentified Propranolol sales to unidentified persons in New York to manufacture contacts with this forum.  But those individuals, if they exist, are not before this Court and, in any event, Plaintiffs cannot support their claims for specific jurisdiction based on conduct directed at others.  Second, Plaintiffs press

---

[1]   Terms defined in the memorandum in support of the Rule 12(b)(2) motion of the Out-of-State Defendants, ECF 66 (Jan. 27, 2017) ("Mem."), have the same meaning herein.  "Opp'n" means the Opposition to that motion, ECF 86 (Feb. 10, 2017).  The Out-of-State Defendants, along with all other Defendants in these actions, also file today a separate reply on their Rule 12(b)(6) motion.

an extraordinary theory of "nationwide contacts" and conclude that service of process in one

state is sufficient to subject domestic antitrust defendants to personal jurisdiction in *any* of the 50

states (as well as the District of Columbia and Puerto Rico).  That is not the law under *Walden*

and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).[2]  Plaintiffs have not shown jurisdiction *in*

*personam* here and their claims should be dismissed as to the Out-of-State Defendants.

> A.   **The Complaints Fail To Allege A Causal Link Between The Out-of-State**
> **Defendants' New York Contacts And The Named Plaintiffs' Injuries Based**
> **On Propranolol Purchases.**

**1.**  The Complaints do not establish a "but for" connection between the alleged forum-

based misconduct of the Out-of-State Defendants and the injuries Plaintiffs purport to have

suffered when they purchased Propranolol, and, therefore, fail to allege "suit-related conduct"

that "create[s] a substantial connection" between the claims and this forum.  *Walden*, 134 S. Ct.

at 1121.  Plaintiffs are mistaken in attempting to predicate specific jurisdiction over the Out-of-

State Defendants on Medicaid data underlying Propranolol sales transactions in New York,

presumably involving unnamed New York residents not before the Court; Plaintiffs nowhere

allege that they bought Propranolol in New York.  Opp'n 1-2.  Specific jurisdiction can only be

measured by the allegations about the *claims of the named Plaintiffs*.  *Beach v. Citigroup Alt.*

*Invs. LLC*, No. 12 Civ. 7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014); Mem. 5.  But

Plaintiffs allege no purchases of Propranolol in New York from the Out-of-State Defendants or

anyone else.  Plaintiffs are entities organized in Illinois and Puerto Rico and complain (at most)

of drug purchases in Michigan (by FWK's assignor) and in Puerto Rico (by Castillo)—and they

allege price increases following meetings in Florida and Maryland between generic

pharmaceutical companies.  FWK Compl. ¶¶ 5, 8, 36; CCI Compl. ¶¶ 7, 27.  But Plaintiffs have

---

[2]    By making no contrary argument under *Daimler*, Plaintiffs concede that the Out-of-State
Defendants are not "essentially at home" in New York such that they could be subject to general
jurisdiction.  Mem. 6-7.

2

alleged no Article III injury-in-fact personal to them based on drug purchases or other events in New York. And precedent squarely forecloses their bid to extend specific jurisdiction by relying on the allegations of "injury . . . suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016); Mem. 11 n.4.

Furthermore, the assorted other activities of the Out-of-State Defendants to which the Opposition points are not "in-state activit[ies] that 'gave rise to the episode[s]-in-suit,'" and Plaintiffs allege no other conduct through which Upsher and Heritage "expressly aim[ed]" at New York. *Waldman*, 835 F.3d at 331, 337. Thus, for example, Plaintiffs attempt to rely on Upsher's participation in National Association of Chain Drug Stores meetings in New York (Opp'n 2-3), but Plaintiffs do not allege that Upsher (or anyone else) engaged in any misconduct at the meetings referred to in their Opposition. Indeed, Plaintiffs do not even claim that any other Defendant attended those meetings. Instead, the only particular trade events Plaintiffs identify in their Complaints—events held by the Generic Pharmaceutical Association—took place in Florida and in Maryland, *not New York*. FWK Compl. ¶¶ 5, 8; Castillo Compl. ¶ 7. The fact that Upsher employees attended a convention in a state cannot, without additional factual allegations, create specific jurisdiction in that state. And Plaintiffs concede that the other purported contacts of Upsher with New York have nothing to do with Propranolol, let alone a purported conspiracy to fix prices for Propranolol. For instance, Upsher purportedly participated in a joint venture "to develop new drugs," not to sell Propranolol. Opp'n 3. And Upsher's litigation of unrelated cases in New York (one about patents and one about an Alzheimer's disease medication not at issue here), are of no consequence to the claims by these Plaintiffs in this case. Opp'n 3-4.

Plaintiffs' submissions concerning Heritage's New York contacts are similarly uncoupled from the asserted claims.  The geographical distance between Heritage's New Jersey principal place of business and the New York border, and Heritage's registration to do business in New York, do not come close to showing transactions or even communications in New York between Plaintiffs and Heritage.  Opp'n 4.  Heritage's description of sales on its website, and its indirect parent corporation's description of nationwide sales efforts in a prospectus, are also not connected to Plaintiffs' claims, *id.*; the Complaints omit any allegation that, for example, Plaintiffs even read those materials, let alone relied on those websites or that prospectus to buy Propranolol from Heritage.  Moreover, the unadjudicated assertions of the State Attorneys General in their civil action regarding entirely distinct generic drugs (not Propranolol) now pending in the District of Connecticut likewise lack meaningful connection to *this action* about Propranolol.  Opp'n 4-5.

The relationship between the submitted materials and the claims asserted is so weak that, even "resolving all doubts in the [Plaintiffs'] favor," *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), the materials cannot meet their burden to show *suit-related* conduct connecting the claims to the Defendants' forum contacts.[3]

**2.**  Plaintiffs' attempt to water down the causation requirement for specific jurisdiction under the "purposeful availment" and "effects" tests also fails.  Opp'n 11-15.  Courts could not be clearer that "specific jurisdiction requires 'no less than a 'but for' connection between the

---

[3]  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 134 S. Ct. at 1125.  A plaintiff's state of residence is relevant only insofar as it "enhance[s] defendant's contacts with the forum."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984); *see Rush v. Savchuk*, 444 U.S. 320, 329, 332 (1980) (plaintiff's contacts with forum cannot be decisive in assessing defendant's due process rights).  Although the Complaints do not raise the question because neither Plaintiff resides in New York, addition of named New York residents as plaintiffs would at most "enhance" the basis for specific jurisdiction, not prove it.

defendant's  forum-directed activities and the claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 7378980, at *8 (S.D.N.Y. Dec. 20, 2016) (*LIBOR VI*).  Indeed, in *Walden*, the Supreme Court used that term:  It explained that there was specific jurisdiction in California over the defamation defendants in *Calder v. Jones*, 465 U.S. 783 (1984), because "the reputational injury caused by the defendants' story would not have occurred *but for* the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Walden*, 134 S. Ct. at 1124 (emphasis added).  To repeat: *Walden* held that a "defendant's suit-related conduct must create a substantial connection with the forum State." 134 S. Ct. at 1121 (emphasis added).  And *Waldman* took "suit-related conduct" to mean conduct "that could have subjected [the defendant] to liability."  835 F.3d at 335; *see id.* at 337.  Plaintiffs show no such but-for connection between the Out-of-State Defendants' New York activities and the Plaintiffs' injury.

Instead, Plaintiffs misinterpret various Second Circuit decisions which required *at least* a but-for causal connection, absent here, between a defendant's forum contacts and the plaintiff's claim.  *See Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998).  While some Second Circuit decisions have also examined a broader range of related forum contacts, each has identified at least some conduct in the forum with a but-for or proximate causal connection to the claim.  In some cases, the forum conduct formed "part of the principal wrong at which the plaintiffs' lawsuit [wa]s directed." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).  In *Licci*, for example, the defendants used "New York's banking system" to direct cash to terrorist groups, using the forum "as an instrument for accomplishing the alleged wrongs for which the plaintiffs s[ought] redress." *Id.* at 171.  And in *Chloé v. Queen Bee of Beverly Hills*, 616 F.3d 158 (2d Cir. 2010), "the act that was the genesis" of the trademark infringement suit

was the shipment into New York of a counterfeit handbag.  *Id.* at 165.  Elsewhere, the claims

involved a breach of duty that attached to the defendant by virtue of its conduct in the forum.

Thus, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002),

even if the defendant law firm had not solicited the plaintiffs' business in New York, the firm's

cultivation of the New York legal market was a "proximate cause" of the client engagement that

gave rise to the legal malpractice claims at issue.  *Id.* at 128.  And in *Chew*, the defendant in a

suit alleging wrongful death at sea recruited the decedent in the forum to work on his yacht.  143

F.3d at 30.  Here, Plaintiffs' claims would be *the same* even if the Out-of-State Defendants had

no New York contacts.  For example, New York contacts are not "the instrument for

accomplishing the alleged wrongs" suffered—in Michigan by FWK's assignor and in Puerto

Rico by Castillo—unlike in *Licci*.  FWK Compl. ¶ 36; Castillo Compl. ¶ 27.  Nor are New York

contacts the "genesis" of those harms, unlike in *Chloé*.

     Likewise incorrect is Plaintiffs' effort to dilute the "effects" test based on out-of-forum

conduct.  Opp'n 14-15.  That test applies where a defendant's "intentional, and allegedly

tortious, actions were expressly aimed at" the forum and "calculated to cause injury" there.

*Calder*, 465 U.S. at 789, 791 (1984); *Waldman*, 835 F.3d at 337.  The Complaints contain no

allegations of this kind concerning the Out-of-State Defendants' intention to cause injury in New

York.  And even if they had, personal jurisdiction would be proper only if "the effects" of the

defendant's conduct on Plaintiffs were "tethered to [the forum] in a[] meaningful way."  *Walden*,

134 S. Ct. at 1125.[4]

---

[4]   Plaintiffs err in relying (Opp'n 14-15) on *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 1268267, at *6 (S.D.N.Y. Mar. 31, 2016) ("*FOREX*"), where the court exercised specific jurisdiction over foreign exchange spot market manipulation claims predicated on New York transactions alleged in the operative pleading and "supplemented" with

Plaintiffs cannot save the Complaints by relying on New York's long-arm statute.  Opp'n 13-14.  The personal jurisdiction inquiry typically has two steps—asking first, whether the defendant is subject to jurisdiction under the law of the forum, and second, whether exercise of jurisdiction comports with due process.  *Sonera Holding B.V. v. Çukurova Holding A.*, 750 F.3d 221, 224 (2d Cir. 2014) (*per curiam*).  But because personal jurisdiction is "incompatible" here with due process under *Walden* at the second step, there is no need to consult the forum state's long-arm statute at the first step.  *Id.* at 225.[5]

**3.**  Plaintiffs also err in contending that they have shown jurisdiction vicariously based on "the in-forum contact of co-defendant conspirators," let alone that such a showing would be consistent with due process.  Opp'n 15.  Plaintiffs have not met the requirements in *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972), which held that "mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator" absent allegations of a partnership with a "general supervision" relationship between them.  There are no such partnership and supervision allegations here as to the Out-of-

---

*(Cont'd from previous page)*

facts from regulatory filings showing New York spot market transactions.  The Complaints here do not comparably describe in-forum injury to ("effects" on) Plaintiffs.

5    Alternatively, Plaintiffs' argument fails at the first step.  Under N.Y. CPLR § 302(a)(1), "the claim asserted must arise from th[e alleged] business activity."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci*, 732 F.3d at 168) (quotation marks omitted).  Sales of Propranolol in New York to unidentified persons, and other in-state business activities, do not "form the basis of this action," and the claims are not "directly dependent upon them."  *See Fischbarg v. Doucet*, 880 N.E.2d 22, 29-30, 9 N.Y.3d 375, 384 (2007) ("action arises out of defendants' transaction of business in New York" when there is a "substantial relationship between plaintiff's action," defendants' "solicitation of plaintiff in New York," and "defendants' communications with plaintiff in this state," which together "form the basis of this action and, indeed, plaintiff[']s claims . . . are directly dependent upon them").  The Out-of-State Defendants' New York activities are "merely coincidental occurrences that have a tangential relationship to the present case" incapable of sustaining § 302(a)(1) jurisdiction.  *Id.* (internal quotation marks omitted).

State Defendants.  *Leasco* aligns with the requirement of due process that "the defendant himself" must create the jurisdictional "relationship" with the forum State.  *Walden*, 134 S. Ct. at 1122 (internal quotation marks omitted).[6]  Nor have Plaintiffs alleged any forum contacts made *in furtherance of* the alleged conspiracy to manipulate Propranolol prices—even though "only acts taken pursuant to th[e] conspiracy are jurisdictionally relevant."  *LIBOR VI*, 2016 WL 7378980, at *3-4.  Thus, even if a "conspiracy" theory could be entertained contrary to due process, the Complaints do not meet its basic requirements.[7]

### B.      The Clayton Act's Service Of Process Provision Cannot Cure The Constitutional Defect In The Complaints' Allegations Of Personal Jurisdiction As Applied Here.

Plaintiffs err in contending that the Clayton Act's service provision, 15 U.S.C. § 22, supplies personal jurisdiction based on an extravagant "national contacts" theory the Supreme Court has pointedly declined to address.  Opp'n 6-10; Mem. 14 n.5; *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885 (2011) (plurality).  The constitutional question can be avoided: Plaintiffs lack a facially plausible claim under Rule 12(b)(6) qualifying them to invoke that

---

[6]     *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting the claim that "the assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction"); *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2015 WL 1515358, at *3 & n.5 (S.D.N.Y. Mar. 31, 2015) (noting courts' skepticism of conspiracy-based contacts and rejecting personal jurisdiction on that basis).

[7]     It is not "premature" to reject the "conspiracy theory of jurisdiction" now based on pleading allegations rather than later at the liability stage.  Opp'n 15-16.  Plaintiffs' evidentiary submissions do nothing to support the conspiracy allegations with respect to personal jurisdiction; the pleadings are all they supply.  In any event, the Second Circuit has long distinguished between the tests of liability for a co-conspirator's acts and personal jurisdiction. *See, e.g.*, *Bertha Bldg. Corp. v. Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957) (member of a conspiracy "to cause injury to the plaintiffs in California" could nevertheless "ha[ve] no agents in California" for purposes of personal jurisdiction); *cf. Societe Generale v. Fed. Ins. Co.*, 856 F.2d 461, 465 (2d Cir. 1988) (distinguishing between "co-conspirator liability" and "co-conspirator authority" to act on another's behalf).

statute,[8] and, independently, the statute can be construed to avoid the problem.  *Clark v. Martinez*, 543 U.S. 371, 380-82 (2005).  In any event, the "national contacts" theory is irreconcilable with *Daimler* and *Walden*—at least as to private civil *domestic* antitrust defendants.  However tolerable that may have been in federal agency enforcement actions and in suits against foreign persons on which Plaintiffs chiefly rely, it is not here.  Opp'n 9 & n.17.

Plaintiffs argue that the Second Circuit has established a "rule" allowing "national contacts."  Opp'n 7.  That is not true.  In *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), the court was explicit that it had "not yet decided" whether, "when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole."  *Id.* at 142 n.21.[9]  To be sure, far from supporting Plaintiffs' position that a service of process statute can eliminate the need for contacts with the forum state satisfying due process, *Waldman* stressed that "due process analysis—considerations of minimum contacts and reasonableness— applies even when federal service-of-process statutes are satisfied."  *Id.* at 343.

Plaintiffs offer no reason to abandon constitutional inquiry into fairness and reasonableness solely because jurisdiction is asserted under a federal statute rather than a state

---

[8]    Plaintiffs do not contest the Court's discretion to bypass the "national contacts" question by first granting the Rule 12(b)(6) motion.  Mem. 14.  They do not address whether, in that circumstance, the dismissal is properly classified as with or without prejudice.  Opp'n 17 n.22.

[9]    Contrary to Plaintiffs' contention, *Waldman* does not render *Gucci* "irrelevant."  Opp'n 8-9. *Waldman* did not say it was deciding that issue.  The Palestinian entities' forum contacts were inadequate to sustain specific jurisdiction over the *Waldman* plaintiffs' claims, *even considering* contacts with the United States (namely, via their "Washington, D.C. mission"), rather than those limited to New York, so the court had no occasion to endorse "nationwide contacts."  835 F.3d at 341.  District courts have grasped that *Gucci* left the question open.  Mem. 14; *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 285 n.11 (E.D.N.Y. 2016), *cited at* Opp'n 10. Plaintiffs also lean on *FOREX* but overlook (Opp'n 10) that the court there examined foreign banks' "contacts throughout the United States" where that approach was *not* "disputed."  2016 WL 1268267, at *3 n.2, 5 n.3.

long-arm statute.  *See id.* at 330 (Fifth and Fourteenth Amendments impose identical restrictions

on personal jurisdiction).  Importantly, *Daimler* and *Walden* involved claims under federal

statutes but nonetheless focused upon the fairness and reasonableness of personal jurisdiction *in

the forum state*.  *Daimler* considered whether claims under the Alien Tort Statute and the Torture

Victim Protection Act of 1991 could be maintained in federal court in California.  Though

federal claims were at issue, the Supreme Court focused on due process considerations of "fair

play and substantial justice" in maintaining the action in California.  134 S. Ct. at 754 (citation

and internal quotation marks omitted).  Similarly, *Walden* involved a federal common law claim

brought in federal court.  134 S. Ct. at 1120.  Nonetheless, the Supreme Court was still

concerned as a matter of due process with the defendant's liberty interests in defending suit in

Nevada.  *See id.* at 1125, n.9 ("[W]e reiterate that the 'minimum contacts' inquiry principally

protects the liberty of the nonresident defendant, not the interests of the plaintiff.").  Those

liberty interests here require founding personal jurisdiction on contacts with New York.  At an

absolute minimum, the Clayton Act should be construed to avoid the "serious constitutional

concerns."  *Brown v. Plata*, 563 U.S. 493, 526 (2011); *see Clark*, 543 U.S. at 380-82.

    **C.**    **Jurisdictional Discovery Is Unwarranted.**

The demand for jurisdictional discovery should be rejected.  Opp'n 16-17.  Where there

has been no prima facie showing of personal jurisdiction, "courts have displayed an

unwillingness to grant additional discovery on jurisdictional issues."  *Langenberg v. Sofair*, No.

03 Civ. 8339, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (internal quotation marks

omitted); *see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (when "the

allegations failed to meet the relevant standard for jurisdiction," denial of discovery is proper).

Plaintiffs have failed to make the prima facie showing.  *See Laydon*, 2015 WL 1515358, at *7;

*accord LIBOR VI*, 2016 WL 7378980, at *14.

Dated:   New York, New York                        Respectfully submitted,
         February 17, 2017

                                                   GIBSON, DUNN & CRUTCHER LLP

                                                   By: */s/ D. Jarrett Arp*
                                                   D. Jarrett Arp
                                                   Melanie L. Katsur
                                                   1050 Connecticut Avenue, N.W.
                                                   Washington, D.C.  20036
                                                   Telephone: (202) 955-8500
                                                   Facsimile: (202) 530-9527
                                                   jarp@gibsondunn.com
                                                   mkatsur@gibsondunn.com

                                                   Indraneel Sur
                                                   200 Park Avenue
                                                   New York, New York  10166
                                                   Telephone: (212) 351-4000
                                                   Facsimile: (212) 716-0875
                                                   isur@gibsondunn.com

                                                   ***Attorneys for Defendant Heritage
                                                   Pharmaceuticals Inc.***


                                                   KIRKLAND & ELLIS LLP

                                                   */s/ Jay P. Lefkowitz., P.C.*
                                                   Jay P. Lefkowitz., P.C.
                                                   Devora W. Allon
                                                   Nathan E. Taylor
                                                   601 Lexington Avenue
                                                   New York, New York  10022
                                                   Telephone: (212) 446-4800
                                                   Facsimile: (212) 446-6460
                                                   lefkowitz@kirkland.com
                                                   devora.allon@kirkland.com
                                                   nate.taylor@kirkland.com

                                                   ***Attorneys for Defendant Upsher-Smith
                                                   Laboratories, Inc.***