UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FWK HOLDINGS, L.L.C., on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>ACTAVIS ELIZABETH, LLC, TEVA PHARMACEUTICALS USA, INC., PLIVA, INC., MYLAN INC., MYLAN PHARMACEUTICALS INC., UDL LABORATORIES, INC., PAR PHARMACEUTICAL, INC., HERITAGE PHARMACEUTICALS INC., BRECKENRIDGE PHARMACEUTICALS, INC., AND UPSHER-SMITH LABORATORIES, INC.<br><br>            Defendants. | Case No. 1:16-cv-09901 (JSR)<br><br>ECF Case |
| CÉSAR CASTILLO, INC., individually and on behalf of all those similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>ACTAVIS ELIZABETH, LLC, BRECKENRIDGE PHARMACEUTICALS, INC., HERITAGE PHARMACEUTICALS INC., MYLAN INC., MYLAN PHARMACEUTICALS INC., PAR PHARMACEUTICAL, INC., PLIVA, INC., TEVA PHARMACEUTICALS USA, INC., UDL LABORATORIES, INC., AND UPSHER-SMITH LABORATORIES, INC.<br><br>            Defendants. | Case No. 1:17-cv-00078 (JSR)<br><br>ECF Case |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>JOINT MOTION TO DISMISS THE CLASS ACTION COMPLAINTS</u>**

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS DO NOT EVEN ALLEGE PARALLEL CONDUCT. ............................... 2

II. PLAINTIFFS' SUPPOSED "PLUS" FACTORS ARE INSUFFICIENT. ......................... 3

    A. Plaintiffs' "motive" allegations do not suffice ......................................................... 3

    B. Plaintiffs' conclusion that Defendants "acted contrary" to their self-interest is both unsupported and insufficient to support an inference of collusion………..5

    C. Plaintiffs do not allege a "high level of interfirm communications." ..................... 6

    D. Plaintiffs' allegations regarding the State AG Action and governmental investigations are irrelevant. ..................................................................................... 8

    E. Plaintiffs have not pleaded individual conduct of each Defendant ......................... 9

III. PLAINTIFFS LACK STANDING TO ASSERT THEIR SHERMAN ACT CLAIMS. ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
   181 F.3d 216 (2d Cir. 1999)...................................................................................................9

*Advanced Tech. Corp. v. Instron, Inc.*,
   925 F. Supp. 2d 170 (D. Mass. 2013) ......................................................................................5

*Arista Records LLC v. Lime Grp. LLC*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007)....................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................3

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
   985 F. Supp. 2d 612 (S.D.N.Y. 2013)......................................................................................9

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)........................................................................................10

*In re Blood Reagents Antitrust Litigation*,
   756 F. Supp. 2d 623 (E.D. Pa. 2010) ...................................................................................2, 4

*In re Chocolate Confectionary Antitrust Litigation*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) .................................................................................4, 5

*In re Crude Oil Commodity Litig.*,
   No. 06-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ....................................................4

*In re Domestic Drywall Antitrust Litig.*,
   163 F. Supp. 3d 175 (E.D. Pa. 2016) .......................................................................................7

*In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*,
   No. CIV. 12-711, 2014 WL 3971620 (D.N.J. Aug. 13, 2014) .........................................3, 6, 7

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007)........................................................................................................9

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011)....................................................................................9

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   No. 14-MD-2573 (VEC), 2016 WL 5794777 (S.D.N.Y. Oct. 3, 2016) ...................................9

# TABLE OF AUTHORITIES (CONT'D)

Page(s)

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ...................................................................................................5

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
   997 F. Supp. 2d 526 (N.D. Tex. 2014) ........................................................................................6

*In re Processed Egg Prods. Antitrust Litig.*,
   312 F.R.D. 124 (E.D. Pa. 2015) ..................................................................................................2

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ...................................................................................................5

*LaFlamme v. Societe Air France*,
   702 F. Supp. 2d 136 (E.D.N.Y. 2010) .....................................................................................8, 9

*Martin v. U.S. S.E.C.*,
   734 F.3d 169 (2d Cir. 2013) ......................................................................................................10

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) ...............................................................................................2, 3, 7

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) .......................................................................................10

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ..........................9

*Starr v. Sony BMG Music Entertainment*,
   592 F.3d 314 (2d Cir. 2010) ........................................................................................................6

**Rules**

Fed.R.Civ.P. 12(f) ..............................................................................................................................9

Plaintiffs concede they have no direct evidence that Defendants conspired to fix the price of Propranolol capsules and tablets. Instead, as their Opposition makes clear, Plaintiffs' Sherman Act claims rest entirely on conclusory allegations of parallel conduct and "plus factors"—both of which must be alleged with sufficient specificity to properly state a claim. Plaintiffs fail on both fronts. Plaintiffs' conclusory allegations about "average price increases," without any detail about which, if any, Defendants actually raised their prices or when any such increases occurred, show nothing about the actions of any individual Defendant, let alone plausibly suggest that they acted in parallel. Plaintiffs' purported "plus factors," taken together or separately, fare no better:

- To show Defendants' purported "motive to conspire," Plaintiffs offer only a general description of the market for generic pharmaceuticals. But Plaintiffs do not allege Defendants' particular motive to fix the prices for Propranolol. In that regard, Plaintiffs' allegations fall short of the allegations made in every case they cite.

- Plaintiffs' theory that price increases for Propranolol necessarily show that Defendants "acted contrary to their self-interest" is also entitled to no weight. Not only is this theory based on nothing more than Plaintiffs' say-so, courts have explicitly rejected it.

- Plaintiffs' allegations that Defendants attend and interact at trade shows and industry events are also not suggestive of conspiracy. Plaintiffs cannot identify one actual conversation between Defendants, let alone a "high level" of inter-firm communication.

- Plaintiffs' continued reliance on irrelevant allegations from the State AG Action and other governmental investigations cannot fill the gaps in Plaintiffs' pleadings. The allegations in the State AG Action cannot support Plaintiffs' claims of price-fixing for Propranolol because those allegations (and that Action more generally) have nothing to do with Propranolol.

Even if Plaintiffs could somehow plead the existence of a claim for price-fixing against Defendants, Plaintiffs would not be able to assert it. Because Plaintiffs cannot even allege which Propranolol product they purchased, their alleged injury is, at most, merely conjectural, and insufficient to confer standing. Plaintiffs' Complaints should be dismissed with prejudice.

# ARGUMENT

## I.   PLAINTIFFS DO NOT EVEN ALLEGE PARALLEL CONDUCT.

Because Plaintiffs concede they have no direct evidence of a price-fixing conspiracy with respect to Propranolol tablets or capsules, their claims can only survive if they sufficiently allege parallel conduct among the Defendants as well as "plus factors" to support their claims. *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013).[1] Plaintiffs fail right out of the gate. Plaintiffs claim to sufficiently allege parallel conduct because "beginning in December 2013 for capsules and February 2015 for tablets, defendants moved in near 'unison' or 'lockstep' to impose extraordinary and unprecedented increases in the cost of propranolol . . . ." (Opp. at 8.) But Plaintiffs offer no *facts* to support these conclusory assertions. Plaintiffs allege no detail whatsoever regarding any Defendant's prices for any Propranolol product at any point in time. The Complaints do not even state that any particular Defendant raised its prices for any customer or when such an increase occurred. Plaintiffs' allegations, based solely on misleading and irrelevant "average price" increases, say nothing about the actions of ***any Defendant*** and, thus, are incapable of establishing that ***all Defendants***, or any subset of them, acted in parallel.[2] *See In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 152 (E.D. Pa. 2015) (average prices do not "tell us anything affirmative about the individual purchasers" or their transactions).

---

[1]   Unless otherwise specified, internal quotations and citations are omitted, and all emphasis has been added. All capitalized terms shall have the same meaning as in Defendants' Memorandum of Law in Support of Defendants' Joint Motion to Dimiss (Dkt. No. 68).

[2]   *In re Blood Reagents Antitrust Litigation* is not to the contrary. 756 F. Supp. 2d 623 (E.D. Pa. 2010). Plaintiffs in *Blood Reagents* alleged the exact month of the price increases by specific defendants. *Id.* at 630.

## II.     PLAINTIFFS' SUPPOSED "PLUS" FACTORS ARE INSUFFICIENT.

Even if Plaintiffs had adequately alleged parallel conduct, they have failed to allege sufficient "plus factors" to establish that the parallel conduct was the result of a conspiracy, rather than unilateral lawful behavior. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[A]llegations of parallel conduct . . . must be placed in a context that raises a suggestion of a preceding agreement, *not merely parallel conduct that could just as well be independent action*."). Pointing to the threadbare "plus factors" offered in the Complaints, Plaintiffs ask the Court to "weigh [them] in their totality" to find the existence of a plausible conspiracy claim. (Opp. at 10.) But even taken together, Plaintiffs' allegations—at most—support the inference of legal conscious parallelism among Defendants. That is not enough to support an inference of collusion. *See Twombly*, 550 U.S. at 556 n.4 (allegations sufficient to suggest collusion "would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties").

### A.     Plaintiffs' "motive" allegations do not suffice.

Plaintiffs argue that Defendants had a "motive to enter into a price fixing conspiracy," but they allege no non-conclusory facts suggesting that Defendants had any particular motive to collude over the price of Propranolol capsules or tablets. Plaintiffs incorrectly argue that pleading motive only "requires allegations suggesting that the industry is conducive to oligopolistic price fixing, either interdependently or through a more express form of collusion." (Opp. at 11 (quoting *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, No. CIV. 12-711, 2014 WL 3971620, at *7–8 (D.N.J. Aug. 13, 2014)). That is not the law in this Circuit. As the Second Circuit has explained, allegations that "defendants operate in an oligopolistic market . . . may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism." *Citigroup*, 709 F.3d at 139. To

3

state a claim, a plaintiff must come forward with alleged facts—specific to the market at issue—suggesting that the defendants had a particular motive to conspire. *Id.*; *see also In re Crude Oil Commodity Litig.*, No. 06-6677, 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007) (a "generalized [profit] motive" that "could be imputed to any corporation with a large market presence in any commodity market, is insufficient to show intent").

Here, Plaintiffs rest their motive theory on *ipse dixit* allegations that (1) generic pharmaceuticals like Propranolol are commodity products that are rigorously regulated, (2) the market for generic drugs is highly concentrated, (3) there are regulatory and manufacturing barriers to entry common to all pharmaceuticals, including Propranolol, and (4) many patients cannot substitute other medications for Propranolol. (Opp. at 11-12; *see also* FWK Compl. ¶¶ 106-115.) These allegations say nothing about the existence of any conspiracy, let alone with respect to these specific Defendants and products. Under Plaintiffs' flawed theory, any time prices increase for any generic medication by more than one manufacturer, Plaintiffs would have a claim of collusion. But that is not (and cannot possibly be) the law.

Indeed, Plaintiffs' own cited cases illustrate that their allegations are completely insufficient. Unlike here, the plaintiffs in *In re Chocolate Confectionary Antitrust Litigation*, offered detailed market data—entirely absent from the Complaints here—showing that the defendants operated "[i]n a saturated, declining market" and "faced stagnant or decreasing demand with limited capacity for market growth." 602 F. Supp. 2d 538, 577 (M.D. Pa. 2009). Based on this data, the court concluded that defendants' price-fixing represented "a plausible reaction to harsh market realities," since they had no other way to increase profits in a declining market. *Id.* at 576-77. Plaintiffs in *Blood Reagents* alleged a similar detailed motive. 756 F. Supp. 2d at 631. Rather than relying on generic descriptions of the healthcare market, as

4

Plaintiffs do here, the plaintiffs in *Blood Reagents* alleged facts showing that each defendant "was experiencing significant financial difficulty" in the sale of blood reagent products prior to the conspiracy. *Id.* Thus, defendants had "a motive for a conspiracy to raise prices" because they were "losing so much money before the conspiracy" that one defendant broke covenants to its bank and the other planned to leave the market altogether. *Id.* In contrast, Plaintiffs in this case do not and cannot allege such a motive on the part of Defendants.

### B. Plaintiffs' conclusion that Defendants "acted contrary" to their self-interest is both unsupported and insufficient to support an inference of collusion.

Plaintiffs argue that "absent an agreement, Defendants could not have sustained the sudden and extraordinary spikes in price of a mature, generic commodity, such as propranolol." (Opp. at 12.) But this self-serving and conclusory assertion does nothing to plausibly suggest collusion. Even if Plaintiffs had adequately alleged that Defendants raised their prices for Propranolol in lockstep (and they have not), courts have addressed this very behavior and concluded that nothing about it is irrational or contrary to any defendant's unilateral self-interest. Quite the opposite: courts recognize that it is within a defendant's interests to raise prices "confident that if its price is followed, all firms will benefit." *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015). At most, therefore, Plaintiffs' allegations are suggestive of perfectly lawful conscious parallelism on the part of Defendants, which cannot give rise to an inference of collusion. *See, e.g.*, *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1342 (11th Cir. 2010) ("Jacobs had the burden to present allegations showing why it is more plausible that TPX and its distributors . . . would enter into an illegal price-fixing agreement . . . to reach the same result realized by purely rational profit-maximizing behavior."); *Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp. 2d 170, 180 (D. Mass. 2013) ("Defendants

had no apparent need to conspire to block an ABI standard when they could effectively accomplish this objective on their own.").

Once again, none of the cases Plaintiffs cite suggests otherwise. For instance, in *Starr v. Sony BMG Music Entertainment*, the plaintiffs alleged facts showing that the defendants had agreed to jointly launch a product that a "prominent computer industry magazine concluded that 'nobody in their right mind will want to use'" and, thus, "some form of agreement among defendants would have been needed to render the enterprises profitable." 592 F.3d 314, 324 (2d Cir. 2010). In addition, the plaintiffs quoted the defendant's CEO who suggested that the product was "formed expressly as an effort to stop the 'continuing devaluation of music.'" *Id.*[3] Of course, Plaintiffs here offer no such allegations. Their bare allegation that Defendants acted against their self-interest solely because "average" prices for Propranolol increased does not give rise to any inference that any individual Defendant increased prices as a result of collusion. *See In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 539 (N.D. Tex. 2014) ("Just because Defendants' rational business interests can be recast in a suspicious light does not mean the allegations actually suggest a conspiracy was formed.").

### C. Plaintiffs do not allege a "high level of interfirm communications."

Plaintiffs also claim to have "alleged a large number of direct interfirm communications that facilitated the conspiracy, through Heritage's former executives Malek and Glazer, trade associations such as GPhA, and other industry events." (Opp. at 13.) They have not. To adequately plead a high level of interfirm communications, Plaintiffs must plead facts **evidencing actual communications** between Defendants' employees. *See Citigroup, Inc.*, 709

---

[3] And in Plaintiffs' other case, the court held that there were sufficient specific allegations of communications among defendants to raise prices, and that the defendants acted contrary to their self-interest where one defendant took the lead in "steeply" raising prices for pipe fittings *during a significant downturn in demand*. *In re DIPF*, 2014 WL 3971620, at *12.

F.3d at 139–40 (affirming dismissal for failing to allege specific communications). But Plaintiffs do not allege even one instance of communication between Defendants regarding Propranolol, nor do Plaintiffs identify any representatives of Defendants who were supposedly in contact.[4]

Plaintiffs allege, at most, that Defendants had an "opportunity" to interact at industry events. (*See* FWK Compl. ¶¶ 76-78; CCI Compl. ¶¶ 66–68.) Such allegations fall far short of alleging a "plus factor" suggesting collusion. Indeed, the very trade shows Plaintiffs identify cut against any inference that price collusion occurred there. For instance, Plaintiffs claim that the "average prices" for Propranolol capsules rose after the October 2013 GPhA meeting. But that meeting was GPhA's "Fall Technical Conference," the agenda for which related to developments in FDA regulations, and had nothing to do with the commercial operations related to the generic pharmaceuticals business.[5] Not surprisingly, therefore, Plaintiffs cannot allege that pricing was discussed at this meeting. And, also not surprisingly, Plaintiffs cannot allege that any employees of Defendants responsible for pricing even attended this meeting. Plaintiffs simply identified the GPhA meeting closest in time to the alleged price increase and now claim that collusion must have occurred there. But the mere existence of routine trade functions in the pharmaceutical business does not suggest collusion as a matter of law. *See Citigroup, Inc.*, 709 F.3d at 140 (dismissing plaintiff's complaint, finding reference to two specific emails among three defendants insufficient to allege a "high level" of interfirm communications).

---

[4]  This stands in stark contrast to the cases Plaintiffs cite regarding "interfirm communications." *In re DIPF*, 2014 WL 3971620, at *13 (plaintiffs identifying "several **specific telephone calls** between Defendants as well as…a public letter"); *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 255 (E.D. Pa. 2016) (plaintiffs providing call notes and emails evidencing specific communications between defendants).

[5]  GPhA, Events: 2013 GPhA/FDA Fall Technical Conference, http://www.gphaonline.org/events/past-events/gpha-2013-fall-technical-conference (last visited Feb. 11, 2017).

7

### D. Plaintiffs' allegations regarding the State AG Action and governmental investigations are irrelevant.

Plaintiffs try to defend their reliance on the State AG Action[6] by arguing that there is "no logical reason plaintiffs cannot rely upon highly detailed factual allegations from the State AG complaint, which itself is based upon an exhaustive investigation of the type that must await discovery for private litigants." (Opp. at 14.) In fact, however, there is. The allegations contained in the State AG Action do not mention Propranolol—not even once. Most of the Defendants in this case have no connection to the State AG Action. And Plaintiffs concede that the allegations relate to a different purported conspiracy. The law is clear that Plaintiffs cannot build a lawsuit by copying allegations from unrelated cases. *See LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 154 (E.D.N.Y. 2010) (rejecting allegations based on proceedings that involved different products).

Hoping to bridge the gap between these two actions, Plaintiffs now argue that the charges against Messrs. Malek and Glazer are part of a "broader federal investigation of the generic pharmaceutical industry." (Opp. at 15.) But this opaque allegation lends no credence to Plaintiffs' conspiracy claims. The mere existence of an "investigation of the generic pharmaceutical industry" is so broad as to be meaningless and says nothing about the Defendants or their conduct with respect to Propranolol.[7] Such sweeping allegations cannot support a conspiracy claim.[8] *See, e.g.*, *LaFlamme*, 702 F. Supp. 2d at 154 ("[N]either mere participation in

---

[6] Breckenridge is not a defendant in the State AG case, nor is it involved in any of the governmental investigations.

[7] The irrelevance of the allegations regarding Messrs. Malek and Glazer is particularly apparent with respect to Propranolol capsules, which Heritage (as well as Mylan, Par, and Pliva) is not alleged to have sold (and did not sell) during the alleged capsules Class Period.

[8] Plaintiffs' reliance on the State AG Action and the existence of investigations is not only insufficient, such references must also be disregarded. *See RSM Prod. Corp. v. Fridman*, 643

an investigatory interview nor the receipt of a subpoena is necessarily probative of conspiracy."); *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-MD-2573 (VEC), 2016 WL 5794777, at *16 (S.D.N.Y. Oct. 3, 2016) ("[The] mere fact that regulatory entities are investigating the possibility of similar misconduct . . . is not a 'plus factor.'"); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011) (dismissing complaint for "missing . . . the 'larger picture' from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies").

### E. Plaintiffs have not pleaded individual conduct of each Defendant.

Case law is clear that antitrust plaintiffs must allege facts showing that the defendants, "***in their individual capacities***, consciously committed themselves to a common scheme." *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999). Once again however, Plaintiffs' attempts to state collusion claims against each Defendant fall woefully short. With respect to Teva, Actavis, Pliva, Mylan, Par, and Heritage, Plaintiffs simply reiterate their allegations based on the existence of unrelated and unsubstantiated governmental investigations. (Opp. at 16–19.) But such allegations do not and cannot support a claim of price fixing for Propranolol capsules or tablets. Even more strikingly, with respect to Breckenridge and Upsher-Smith, the only actual facts Plaintiffs allege are that each sold Propranolol capsules. This is nowhere near enough to survive a motion to dismiss. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50–51 (2d Cir. 2007) (affirming dismissal where complaint alleged conspiracy "in entirely general terms without any specification of any particular activities by any particular defendant"); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 618

---

F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f)."), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

9

(S.D.N.Y. 2013) (dismissing complaint where plaintiffs failed to "specify who participated in these hypothetical discussions or agreements").

### III. PLAINTIFFS LACK STANDING.

For Plaintiffs to have standing, they must allege facts sufficient to establish that they suffered an "injury-in-fact" due to Defendants' purported antitrust violation. *See Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 567 (S.D.N.Y. 2007). Plaintiffs try to satisfy their burden by alleging that "plaintiffs purchased Propranolol during the Class Periods directly from one or more of Defendants at artificially inflated prices," (Opp. at 21), but they fail to even allege which Propranolol product they purchased from any particular Defendant. Absent such allegations as to which product they purchased, Plaintiffs' injury is, at most, merely conjectural, and insufficient to confer Art. III or antitrust standing. *See Martin v. U.S. S.E.C.*, 734 F.3d 169, 174 (2d Cir. 2013) (finding possibility that plaintiff was injured, without plaintiff's specific identification of such injury, insufficient); *Arista Records*, 532 F. Supp. 2d at 569 (dismissing claim where "Lime Wire's retail competitors may have 'faced excessive wholesale prices' for licenses as a result of the alleged price-fixing scheme, but LimeWire itself has not alleged any facts demonstrating that it suffered such harm").[9]

### CONCLUSION

For the reasons set forth herein and in Defendants' opening brief, Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' Complaints with prejudice.

---

[9] Unlike Plaintiffs here, the plaintiffs in *Quinn v. Walgreen Co.* and *Goldemberg v. Johnson & Johnson Consumer Cos.*, identified exactly which product they purchased. *See* Case No. 7:12CV08187, Dkt. No. 1 ¶¶ 4–5; Case No. 13 CV 3073, Dkt. No. 1 ¶ 17. Moreover, Plaintiffs here purport to assert class claims against two sets of Defendants, pertaining to different purported conspiracies and regarding different products without satisfying that they are part of either class, and certainly not both.

| | |
|---|---|
| DATED: New York, New York<br>February 17, 2017 | KIRKLAND & ELLIS LLP<br><br>By: */s/ Jay P. Lefkowitz, P.C.*<br>Jay P. Lefkowitz., P.C.<br>Devora W. Allon<br>Nathan E. Taylor<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York  10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-6460<br>lefkowitz@kirkland.com<br>devora.allon@kirkland.com<br>nate.taylor@kirkland.com<br><br>*Attorneys for Defendant Upsher-Smith Laboratories, Inc.* |
| WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>By: */s/ Chul Pak*<br>Chul Pak<br>Jeffrey C. Bank<br>1301 Avenue of the Americas, 40th Floor<br>New York, New York 10019<br>Telephone:  (212) 999-5800<br>Facsimile:  (212) 999-5899<br>cpak@wsgr.com<br>jbank@wsgr.com<br><br>*Attorneys for Defendants Mylan Inc., Mylan Pharmaceuticals, Inc. and UDL Laboratories, Inc.* | KASOWITZ, BENSON, TORRES<br>& FRIEDMAN LLP<br>By: */s/ Marc E. Kasowitz*<br>Marc E. Kasowitz<br>Hector Torres<br>Sheron Korpus<br>Seth Davis<br>Seth A. Moskowitz<br>1633 Broadway<br>New York, New York 10019<br>Tel.: (212) 506-1700<br>Fax: (212) 506-1800<br>mkasowitz@kasowitz.com<br>htorres@kasowitz.com<br>skorpus@kasowitz.com<br>sdavis@kasowitz.com<br>smoskowitz@kasowitz.com<br><br>*Attorneys for Actavis Elizabeth, LLC, Pliva, Inc. and Teva Pharmaceuticals USA, Inc.* |

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br><br>By: */s/ D. Jarrett Arp*<br>D. Jarrett Arp (*admitted pro hac vice*)<br>Melanie L. Katsur (*admitted pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Telephone: (202) 955-8500<br>Facsimile: (202) 530-9527<br>jarp@gibsondunn.com<br>mkatsur@gibsondunn.com<br><br>Indraneel Sur<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 351-4000<br>Facsimile: (212) 716-0875<br>isur@gibsondunn.com<br><br>*Attorneys for Defendant Heritage Pharmaceuticals Inc.* | MORGAN, LEWIS & BOCKIUS LLP<br><br>By: */s/ Stacey Anne Mahoney*<br>Stacey Anne Mahoney<br>101 Park Avenue<br>New York, New York 10178<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001<br>stacey.mahoney@morganlewis.com<br><br>R. Brendan Fee (*admitted pro hac vice*)<br>1701 Market Street<br>Philadelphia, Pennsylvania 19103<br>Telephone: (215) 963-5000<br>Facsimile: (215) 963-5001<br>brendan.fee@morganlewis.com<br><br>*Attorneys for Defendant Breckenridge Pharmaceutical, Inc.*<br><br>O'MELVENY & MYERS LLP<br>By: */s/ Edward D. Hassi*<br>Edward D. Hassi<br>1625 Eye St., N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5336<br>Facsimile: (202) 383-5414<br>ehassi@omm.com<br><br>Edward Moss<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 728-5671<br>Facsimile: (212) 326-2061<br>emoss@omm.com<br><br>*Attorneys for Defendant Par Pharmaceutical, Inc.* |