UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

FWK HOLDINGS, L.L.C.,

Plaintiff,

v.

ACTAVIS ELIZABETH, LLC, et al.,

Defendants.

------------------------------x

16 CV 09901 (JSR)
17 CV 00078 (JSR)
17 CV 00980 (JSR)
17 CV 01039 (JSR)

Conference

New York, N.Y.
February 21, 2017
11:35 a.m.

Before:

HON. JED S. RAKOFF

District Judge

APPEARANCES

KAPLAN FOX & KILSHEIMER LLP
Attorneys for Plaintiff FWK Holdings
BY: GREGORY ARENSON
ELANA KATCHER

HAGENS BERMAN SOBOL SHAPIRO LLP
Attorneys for Plaintiff FWK Holdings
BY: DAVID S. NALVEN

ZWERLING SCHACHTER & ZWERLING LLP
Attorneys for Plaintiff FWK Holdings, L.L.C.
BY: DAN DRACHLER

APPEARANCES

NUSSBAUM LAW GROUP P.C.
Attorneys for Plaintiff Cesar Castillo, Inc.
BY: LINDA P. NUSSBAUM

LIEF CABRASER HEIMANN & BERNSTAIN LLP
Attorneys for Plaintiff American Federation of State County and Municipal Employees District Council 37 Health & Security Plan
BY: DEAN M. HARVEY

GIRARD GIBBS LLP
Attorneys for Plaintiff Sergeants Benevolent Association Health & Welfare Fund
BY: DANIEL C. GIRARD
PETER G. SAFIRSTEIN

KIRKLAND & ELLIS
Attorneys for Defendant Upsher-Smith Laboratories, Inc.
BY: DEVORA W. ALLON

KASOWITZ BENSON TORRES & FRIEDMAN LLP
Attorneys for Defendants Actavis Elizabeth, LLC, Teva Pharmaceuticals USA, Inc., and Pliva, Inc.
BY: SHERON KORPUS

GIBSON DUNN & CRUTCHER LLP
Attorneys for Defendant Heritage Pharmaceuticals, Inc.
BY: JERRY TOWER

MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendant Breckenridge Pharmaceuticals, Inc.
BY: STACEY ANNE MAHONEY

O'MELVENY & MYERS LLP
Attorneys for Defendant Endo International PLC
BY: EDWARD D. HASSI

APPEARANCES

WILLIAMS & CONNOLLY LLP
Attorneys for Defendant Endo International PLC
BY: JOHN E. SCHMIDTLEIN

WILSON SONSINI GOODRICH & ROSATI
Attorneys for Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and UDL Laboratories, Inc.
BY: JEFFREY C. BANK
CHUL PAK
MICHAEL S. SOMMER

JOSEPH C. FOLIO, III
ELLEN R. CLARKE
U.S. Department of Justice, Antitrust Division
Attorneys for Intervenor United States of America

(Case called)

THE COURT: Good morning. We have two new complaints that have been filed. My first suggestion is that we consolidate all these actions for all purposes under the title In re Actavis Antitrust Litigation. Any objection?

MR. NALVEN: Your Honor, there were direct purchasers and indirect purchasers each proceeding as a class. We would recommend that the direct purchaser cases be consolidated and the indirect purchaser cases be consolidated but that the direct purchaser and indirect purchase cases be coordinated for all purposes.

THE COURT: Why?

MR. NALVEN: There are differences in the pleadings. For example, the direct purchasers are proceeding under federal and state law whereas the direct purchasers are proceeding only under federal law.

THE COURT: Don't you anticipate that if the case will go to trial, a great deal of the evidence will be identical in both cases?

MR. NALVEN: Yes, your Honor, certainly much of the liability evidence.

THE COURT: So why don't we consolidate for all purposes? We can have two classes if that turns out to be the situation.

MR. NALVEN: The direct purchasers' position would be

that the cases should not be tried together.

THE COURT: Why not?

MR. NALVEN: Among other things, there is the Illinois pass-on issue, so direct purchasers and indirect purchasers should not be trying the cases together.

THE COURT: I'm sorry. I may not be familiar with that. You say there is a case that says they shouldn't be tried together?

MR. NALVEN: Your Honor, under the Illinois Brick and Hanover Shoe cases and their progeny, the defendants are barred from asserting a defense based on the pass-on of on overcharge. In consequence, the direct purchasers' position would be that the cases should not be tried together.

We can coordinate for purposes of discovery. We can certainly coordinate to a large extent for purposes of summary judgment. Class issues will be different. But for trial, it is our position that they should not be tried together.

THE COURT: I hear what you are saying, but I don't think you are saying that those cases say that. You're saying that because there is a certain defense available to the defendants with respect to indirect purchasers that is not available for direct purchasers, the cases should not be tried together. I don't see why that should be so. If the great bulk of the proof is going to be the same, why should we have two trials?

MR. NALVEN: Your Honor, let me suggest this. Trial is somewhat in the distance.

THE COURT: Oh, no. We are setting today the date for the trial, I guarantee you.

MR. NALVEN: Your Honor, we would request that we be permitted to brief the issue as to whether the direct purchaser and the direct purchaser cases should be tried together. We certainly agree that the cases should be coordinated for discovery purposes, for deposition and document production purposes.

THE COURT: Let me find out, is there any other opposition to consolidation for all purposes?

MR. GIRARD: Your Honor, my name is Dan Girard speaking for the indirect purchasers. If Mr. Harvey has a different view, I will invite him to express that, since he has filed on behalf of a different client. I think these are matters that fall within the Court's discretion in terms of how to structure the pretrial proceedings. If the Court wants it in a single complaint, we will do it that way.

Most of the time these have been done in separate complaints just because I think conceptually it is easier since the classes are distinct classes. But as Mr. Nalven says, the cases can and should proceed on a coordinated basis. If your Honor's view is that they should be consolidated for all purposes, we can do it that way. I just think that by and

large most of these have been done in coordination but as separate complaints because of the fact that the classes are different. That is really all I have to say.

THE COURT: I will for today's purpose treat the cases as coordinated. I will allow any party who thinks they should not be consolidated for all purposes, including trial, to send me letters not to exceed three single-spaced pages by Friday, and I'll take a look at them and make a decision.

MR. NALVEN: Thank you, your Honor.

THE COURT: In terms of coordination, the Court previously entered a case management plan. The original case management form required the case to be ready for trial on June 6th of this year. The then parties convinced me to extend that to September 6th. I'm not going to extend it any further.

But with respect to the new parties, I will extend the date for the filing of any document requests or interrogatories, which were due on January 23rd -- first request for production of documents but the sole request for interrogatories, which are limited to the very limited interrogatories under local rule 33.3(a) -- I will extend that to this Friday as well. All other dates in the case management plan will remain in effect and govern the new cases as well, and all depositions must be joint for all parties.

MS. ALLON: Your Honor, we have a motion to dismiss that has been fully briefed.

THE COURT: Yes. I'm going to get to that in a minute.

MS. ALLON: I'll wait.

THE COURT: We have a motion to dismiss that is going to be heard this Friday. Do you want to make a separate motion to dismiss with regard to the new complaints?

MS. ALLON: Yes, your Honor.

THE COURT: When would you like to file it?

MS. ALLON: We could file it in three weeks.

THE COURT: No.

MS. ALLON: Two weeks.

THE COURT: No, but you're going in the right direction.

MS. ALLON: Ten days?

THE COURT: I was going to say one week, but you wore me down. Ten days.

MS. ALLON: Thank you, your Honor.

THE COURT: Today is the 21st. That would be March 3rd. Answering papers?

MR. GIRARD: Can I make a suggestion, your Honor?

THE COURT: Yes.

MR. GIRARD: With respect to the two indirect purchaser cases, I thought we would offer to file a consolidated complaint that would bring the two cases together. We could do that by Monday.

THE COURT: No, I'm not going to wait until Monday.

MR. GIRARD: How about Friday?

THE COURT: Friday is fine.

MR. GIRARD: The up side is they could move on a single pleading.

THE COURT: Friday is fine.

MR. GIRARD: Thank you, your Honor.

THE COURT: I will give defense counsel, before she even asks, till Tuesday, March 7th, for your moving papers.

How long does plaintiffs' counsel want for answering papers?

MR. GIRARD: Two weeks, your Honor. I think that is the same timing that applied for the direct.

THE COURT: Yes, but you came in late and you are disrupting the entire proceedings here in ways that is fair enough, but you will suffer the consequences. Ten days. March 17th.

MR. GIRARD: Very well, your Honor. Thank you.

THE COURT: Reply papers March 22nd. And we'll have oral argument on March 24th at 2 p.m.

On the assumption that there will be one trial, although of course plaintiffs' counsel may convince me otherwise --

MR. FOLIO: Your Honor, Joseph Folio on behalf of the government. I wanted to bring one issue to your Honor's

attention. The government recently moved to intervene in this matter and your Honor granted that motion.

THE COURT: Yes.

MR. FOLIO: The government has been conferring with plaintiffs, the two existing plaintiffs, as well as all defendants about moving for a limited stay of discovery.

THE COURT: The likelihood of your prevailing on that is about zero, but I'll be happy to hear you. Why don't you come to the front here.

MR. FOLIO: Your Honor, the government intends to move for a limited stay of discovery. We are in the final process of conferring with all parties in hopes of submitting --

THE COURT: How about conferring with me? What possible reason would I have for granting a stay?

MR. FOLIO: Your Honor, you have the broad discretion to grant --

THE COURT: I know I have the power. I'm just saying what is the reason I would want to grant a stay? This case is already much delayed. As far as I'm concerned, it should have been tried in June.

MR. FOLIO: Understood, your Honor. The reason for the request for the stay is the government's ongoing criminal investigation and overlap of that investigation and this case.

THE COURT: You don't have an indictment, do you?

MR. FOLIO: Your Honor, the government unsealed its

first two criminal charges on December 14th in the Eastern District of Philadelphia against two former executives of defendant Heritage Pharmaceutical.

THE COURT: I saw that. But you haven't filed any indictment involving the companies here, have you?

MR. FOLIO: That's correct, your Honor. However, the government's ongoing investigation is much broader than the informations that were unsealed.

THE COURT: You will be thrilled because you will have the benefit of the discovery in this case. You should be asking me to move ahead full steam so that you can have the benefit of all the deposition testimony that will be gathered here.

MR. FOLIO: Your Honor, we think in some sense that is exactly right.

THE COURT: Good. Then we are in agreement and you withdraw your motion?

MR. FOLIO: Unfortunately, not entirely, your Honor. I think there are points in which we are in agreement. For example, I think in large part -- again, this is still the subject of negotiations between the parties -- the government is fine with allowing document discovery to go forward with some small exceptions.

THE COURT: I don't understand what the possible interest of the government is in staying this case.

MR. FOLIO: The issues, your Honor, are the overlap with the government's ongoing criminal investigation.

THE COURT: So what? Parallel proceedings happen all the time.

MR. FOLIO: Yes, your Honor, they do. However, at different points in the government's ongoing criminal investigation civil proceedings may risk the integrity of that investigation.

THE COURT: In what way?

MR. FOLIO: Specifically, your Honor, sworn statements by people who are cooperating with the government's investigation.

THE COURT: So what? So some cooperators may actually have to make statements in advance of the criminal trial? I'm all aflutter with terror at that prospect, or at least it seems you are. What is wrong with that?

THE FOREPERSON: Your Honor, courts that have looked at this issue have found that the prospect of subjecting people who have pled guilty to a crime but who have not yet been sentenced could be inappropriate because the making of multiple statements could lead to a basis for vacating pleas that have already been entered.

THE COURT: Because they gave inconsistent statements or lied under oath? Don't you want to know that in advance before you cut a deal with someone?

THE FOREPERSON: Certainly, your Honor. But with multiple proceedings going on -- to be clear, we are not talking necessarily about all depositions or all statements. The government would only be seeking a limited stay of certainly depositions while allowing --

THE COURT: I don't understand the reason for it.

MR. FOLIO: The basis is the Courts have found it appropriate to granted limited stays of discovery which are to include statements of people who are under investigation, whether or not they are actively cooperating with the government now or may be in sensitive negotiations with the government.

THE COURT: So what? I don't understand. They will have to make some hard choices. And that's their problem, not yours.

MR. FOLIO: Yes, your Honor. However, when the government remains in sensitive negotiations with parties who are the subject of its ongoing criminal investigation --

THE COURT: I wish you all the best. There is nothing like sensitive negotiations, much better than insensitive ones. But I still don't understand the reason for delay.

MR. FOLIO: Your Honor, again, the reasons for the delay and exactly what the government is asking, the government hopes to set forward for you to review in full briefs by the end of this week, if that is all right your Honor. Then the

Court can make an evaluation of exactly what the government is requesting and what the parties have agreed to and determine --

THE COURT: I'm not going to stay anything today. If you want to make a submission, an ex parte submission, I will certainly consider it. When do you want to do that by?

THE FOREPERSON: The government would be prepared to file its motion on Friday, and that would include an ex parte submission explaining --

THE COURT: You are making the motion now. I'm denying it now based on what I have heard. If you want to move for reconsideration based on an ex parte submission, I will allow it.

MR. FOLIO: Yes, your Honor. May we make that submission by Friday?

THE COURT: That's fine.

MR. FOLIO: Thank you, your Honor.

THE COURT: Nevertheless, in the expectation that the Court will not stay anything, let's set a trial date also in the expectation that there will be a single trial. I may be persuaded to stay and I may be persuaded to bifurcate or have two trials, but at least we will have a date in place if we go forward. How long a trial are we talking about in plaintiffs' view?

MR. HARVEY: Your Honor, at this point we would estimate three weeks, speaking for DC 37. Speaking for

plaintiff DC 37, we would estimate three weeks.

THE COURT: I assume you are speaking for everyone unless anyone here disagrees.

MS. NUSSBAUM: Your Honor, particularly if the Court does order a joint trial here, we would say four weeks. There are not going to be experts --

THE COURT: I don't understand. My experience, forgive me, is that what the parties jointly estimate is usually about twice as long as the trial takes, but it screws up my schedule because I have to take the parties at their word and then I find out I was misled. Why in the world would the plaintiffs' case take four weeks?

MS. NUSSBAUM: Your Honor, particularly if the cases are consolidated and there is one trial.

THE COURT: That's the assumption.

MS. NUSSBAUM: That is the assumption. If there is one trial, there will be different experts. The economic experts will be different. Experts will be different on different issues in the direct purchaser and indirect purchaser cases. There are different statutes at issue. The direct purchaser case is just federal claims. The indirect purchaser case will also have various state law claims. There will likely be other expert issues here with respect to these particular products.

With respect to pharmaceutical cases that have gone to

trial --

THE COURT: This is a jury case, right?

MS. NUSSBAUM: I understand that, your Honor.

THE COURT: What any litigator -- I shouldn't use that term. What any trial lawyer knows is that it is critical for both sides to simplify to prevent the jury from losing focus, for matters that might be of interest to some arcane cognoscenti of antitrust law to be totally forgotten about, and the focus be on the things that a jury will be interested in. Where counsel do not adhere to that, which in my experience they almost always do, but if they don't, the Court has to set time limits on witnesses to make sure that everything remains focused.

I find it very difficult to believe it will take four weeks for the plaintiffs' case, but I hear what you are saying. Since you know the case and I don't, I will adhere to your estimate. But I will be very disappointed if it in fact takes four weeks.

Let's hear from defense counsel.

MS. NUSSBAUM: Thank you.

MS. ALLON: Your Honor, if the plaintiffs go for four weeks, we would probably need four weeks too.

THE COURT: I can't imagine that. That's because you want to repeat each and everything that has been said before?

MS. ALLON: Your Honor, the allegation is about two

separate conspiracies with respect to two separate products and roughly ten different defendants.

THE COURT: So we'll put aside eight weeks for the trial. That's why we are setting the trial date now because to set an eight-week trial at the end of the case would not be easily done. We'll start the trial on Wednesday, November 8th, at 9:00 a.m. and continue without a break until the case is completed. That should bring us in before Christmas.

Of course, if we get up the Christmas holiday and counsel isn't completed, I'll be delighted, as I'm sure the jury will, to tell the jury that because counsel couldn't complete the case within their time estimate, we'll have to sit after Christmas as well as. We will sit Monday through Friday 9:00 to 5:00.

Anything else we need to take up today? Yes?

MS. KATCHER: Good morning, your Honor. We have been meeting and conferring with the defendants for the past week on our first set of document requests. We are hoping to bring any overarching disputes to you as soon as possible. I just wanted to clarify that when we do so, I believe the procedure is just to call your clerk and set up a time?

THE COURT: Since you are going to be in court this Friday, maybe we should do it this Friday after the oral argument on the motion to dismiss. Let me ask defense counsel, how long do you think your initial argument on the motion to

dismiss is going to take?

MS. ALLON: Certainly under 30 minutes.

THE COURT: Let's assume, with back and forth, that the oral argument takes no more than an hour and a half. I think that is a reasonable assumption. I have one other favor to ask in a minute. We'll take a pause, and then we will take up any document disputes.

MS. KATCHER: Thank you very much, your Honor.

THE COURT: As you may recall, the class that I teach in Columbia Law School on class actions is going to be present to observe your oral argument on Friday. I thought -- if anyone objects to this, that will be perfectly okay -- I thought after the oral argument it might be nice to take about 15 minutes and have the lawyers talk to the class and answer questions of the class not about the merits of the argument but about what it's like to be an antitrust litigator, and so forth. I think they would be fascinated to hear that. Is that okay with everyone?

MS. NUSSBAUM: Your Honor.

MS. KATCHER: Yes.

MS. ALLON: Yes, your Honor.

THE COURT: Super. Anything else we need to take up today? Very good. Thanks so much.

(Adjourned)